EX PARTE HULL YOUNGBLOOD v. THE STATE.

No. 7849. Decided May 7, 1923.

1.—Contempt—Legislative Committee—Power to Punish.

Where a legislative committee of investigation finds a witness unwilling to testify, the question of conviction and punishment should be referred to the body appointing the committee, and where the Legislature by a concurrent resolution authorized the appointment of a committee composed of three members of the Senate and five Members of the House to investigate the charges alleged, under Article 5517, Revised Civil Statutes, this com-

mittee could not punish the witness for contempt for not testifying, but should have referred the question of conviction and punishment to the bodies appointing the committee.

### 2.—Same—Constitutional Law—Punishment.

Where the legislative committee condemned relator to suffer imprisonment in the county jail for a period of twenty days, or until the expirat'on of the session of the Legislature, unless in the meantime he should purge himself of the contempt by taking oath and giving testimony, such punishment was greater than that named in the constitution, and unauthorized.

### 3.—Same—Exercise of Judicial Power—Constitutional Law—Contempt.

The exercise of judicial power involved in a judgment for contempt is permitted by the Constitution by either branch of the Legislature, and the power granted by the Constitution is not so restrictive of the rights of the Legislature to punish for contempt as to thwart it in the conduct of its proper proceedings, and the term "obstructing its proceedings" is deemed broad enough to embrace not only the things that were done in the presence of the Legislature, but those done in disobedience of a committee, but the punishment must be inflicted by one of the Houses of the Legislature.

### 4.—Same—Special Session—Legislature—Contempt.

This Court has no doubt of the power of the Legislature at a special session to impr'son a witness for contempt, and to investigate those things pertaining to the conduct of its members, etc.

### 5.—Same—Constitutional Law—Judicial Power.

The Constitution of this State is the highest authority known in matters outside the domain of the Federal Constitution, and Article Two of the Constitution, containing the statement, "no person or collection of persons being of one of these departments shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted" means that a Legislative committee cannot exercise power properly attached to the Judicial department of the government. Following Farnham v. Colman, 117 American State Reports, 944.

### 6.—Same—Legislature—Committee—Contempt.

While the Legislature may function through a committee, and because of the refusal of any person to answer proper inquiries before the committee, the matter may be reported to the House appointing the committee for its action, and said House of the Legislature, may, by appropriate proceedings, adjudge such person in contempt, etc., yet the committee itself has no such power because of the forbiddance of the Constitution.

### 7.—Same—Limited Imprisonment—Rule Stated.

The power of the Legislature, while in terms limited to imprisonment for forty-eight hours at any one time, may be exercised time after time for each fresh refusal to testify, and each new contempt until it obtains the desired information.

### 8.—Same—Statutes Construed—Constitutional Law.

Being of opinion that Article 5517, R. C. S., in so far as it attemps to confer power on a committee of the Legislature to punish for contempt is not only without sanction of the Constitution, but is directly contrary to the express declaration of that instrument, and is unconstitutional, and the relator must be discharged.

9.—Same—Constitutional Law—Delegated Power—Committee.

This Court is not able to bring itself in accord with the proposition that the Legislature can delegate to a committee of its own members the right to exercise the limited judicial authority granted by the Constitution to the Legislature itself, and there is no express grant in the Constitution permitting this to be done.

From Travis County.

Original application for writ of habeas corpus asking for release from arrest for contempt in refusing to answer questions as a witness before a Legislative Committee, and which committee adjudged said witness for contempt, and assessed punishment for confinement in the county jail of Travis County, etc., under Article 5517 R. C. S.

The opinion states the case.

*C. Dickson, Jas. Harley, Leonard Brown,* and *B. W. Teagarden,* for appellant.

Where the constitution prescribes a given manner or way in which a power may be exercised, the method thus designated is exclusive; and a constitutional provision authorizing the Legislature to do a certain thing in a certain manner is an implied limitation on the power of the Legislature to do the thing only in the manner prescribed. It is not necessary, in order to render a statute invalid, that it should contravene some express provision of the constitution; if the act is inhibited by the general purpose and scope of the instrument, it is as much invalid as though prohibited by the express letter of some of its provisions. Therefore the implied power and restraints are a very important part of the constitution: Parks v. West, 102 Tex., page 111; 111 S. W., 726; Consolidated Smelting Co. v. Egich (Ariz.), 199 Pac., at pages 134-135; McDonald v. Doust (Idaho), 81 pac., 60; People v. Draper, 15 N. Y., 544; Rathbone v. Wirth, 150 N. Y., 459-483; 45 N. E., 15; Hooper v. Britt, 96 N. E., 372-373.

The expression on one thing in the Constitution is the exclusion of things not expressed. Page v. Allen, 98 Am. D., 272.

"An act violating the true intent and meaning of the instrument, although not within the letter, is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden. A thing within the intent of a Constitution or statutory enactment is, for all purposes, to be regarded as within the words and terms of the law. A written Constitution would be of little avail as a practical and useful restraint upon the different departments of government, if a literal reading only was to be given it, to the exclusion of all necessary implication, and the clear intent ignored, and slight evasions or acts, palpably in evasion of its spirit, should be

sustained as not repugnant to it. The restraints of the Constitution upon the several departments, among which the various powers of government are distributed, cannot be lessened or diminished by inference and implication; and usurpations of power, or the exercise of power in disregard of the express provision or plain intent of the instrument, as necessarily implied from all its terms, cannot be sustained under the. pretence of a liberal or enlightened interpretation, or in deference to the judgment of the legislature, or some supposed necessity, the result of a changed condition of affairs.'' Peo. .v. Albertson, 55 N. Y., 50, 55.

The foregoing authorities sustain the construction of Judge Davidson as to the meaning, intent, scope, and limitation of Section 15, Article 3, of the Constitution, as stated in his opinion in the Wolters case in the 144 Southwestern.

*W. A. Keeling,* Attorney General, *Jno. W. Goodwin,* Assistant Attorney General, and *Jno. C. Wall,* First Assistant Attorney General, for the State.

We wish here to also call attention to a case which is directly in point on all the issues in the instant case. It is that of Sullivan v. Hill (W. Va.) 79 S. E., 670, Am. Ann. Cases 1916B, 1115. In that case the committee was a joint committee to investigate charges of bribery against certain members of the Senate and House of Delegates of West Virginia. In that case the jurisdiction of the committee was not only derived from the joint resolution, but was also derived from a statute very similar, indeed, to our Article 5517, R. S. The punishment inflicted was punishment by the committee for contempt on the part of a witness in refusing to answer questions propounded by the committee. The constitutionality of the statute and of the action of the Legislature and of the Committee was raised. The statute was held valid; the action of the lower court in denying the writ of habeas corpus and remanding the petitioner to the custody of the sheriff was approved.

We respectfully ask the court to read that opinion in its entirety.

At this stage we also call the attention of the Court, particularly to Ex .parte Parker (S. C.) 74 S. E., 466; 55 S. E., 122, which is likewise reported in 114 American State Reports at page 1011. This case is also almost directly in point.

The committee was appointed by a concurrent resolution ''to investigate the affairs of the State dispensary'' and by the resolution was empowered to send for papers and persons, and to swear witnesses, and to require the attendance of any parties whose presence might be deemed necessary. After the committee had been appointed and entered upon the investigation, the General Assembly enacted a statute intended to enlarge the powers of the committee and to remove any doubt as to its right to exercise the powers which the con-

current resolution had endeavored to confer. That statute is almost identical with Article 5517, R. S. The witness Parker was held in contempt of the committee for refusing to answer questions propounded by the committee, and sought to be released on writ of habeas corpus. The Supreme Court of South Carolina held that there was no ground for the interference of that Court in behalf of the witness. After discussing some pertinent authorities, that Court also cited the following authorities as sustaining the conclusions it had reached as to the power of legislative committees. Anderson v. Dunn, 6 Wheat, 204, 5 L. ed. 242; In re Chapman, 166 U. S. 661, 17 Sup. Ct. Rep. 677, 41 L. ed. 1154; Burnham v. Morrissey, 14 Gray, 226, 74 Am. Dec. 676; Keeler v. McDonald (N. Y.), 2 N. E. 615; People v. Sharp, 101 N. Y. 427, 1 Am. St. Rep. 851, 14 N. E. 319; In re Gunn, 50 Kan. 155, 32 Pac. 470, 948, 19 L. R. A. 519.

MORROW, PRESIDING JUDGE.—On an original application for writ of habeas corpus in the District Court release was denied.

During a special session of the Legislature of this State, sitting at Austin, relator, in the City of San Antonio, made a speech in which he gave utterance of general charges of corruption against members of the Legislature in passing legislation. No particulars are given.

Taking note of the published report of the matter, the Legislature, by a concurrent resolution, authorized the appointment of a committee composed of three members of the Senate and five members of the House to investigate the charges alleged to have been made and report the result of the investigation to the Legislature. The committee was appointed and organized. Relator appeared before it in obedience to process but refused to be sworn and testify as a witness in the investigation. Then, as stated in the resolution,

"***said Committee, by motion duly made and seconded, and unanimously adopted, did then and there adjudge the said Hull Youngblood guilty of contempt of said committee in refusing to take the oath as a witness, or to be sworn as a witness, to testify in the matter then under investigation by said Committee."

Relator was by the Committee condemned to suffer imprisonment in the county jail for a period of twenty days or until the expiration of the session of the Legislature, unless, in the meantime, he should purge himself of the contempt by taking oath and giving testimony.

To support the judgment, respondent relies on Article 5517 of the Revised Civil Statutes found in the Acts of 1907, page 6. In that statute it is declared in substance that in the investigation of any public officer elected by the Legislature, or nominee for public office in respect to matters or charges that reflect upon the personal or official integrity of such public officer, or any investigation of any other matter, or for any other purpose that may be ordered by the Legislature of this State,

"***such investigating committee and each member thereof, shall have full power and authority to administer oaths to officers, clerks and stenographers that it may .employ in connection with the performance of its duties, and to any witnesses and parties called to testify before it; and said investigating committee shall have full power and authority to issue any and all process that may be necessary to compel the attendance of witnesses and the production of any books, papers and other written documents it may designate, and to compel any witness to testify in respect to any matter òr charge by it being investigated, in answer to all pertinent questions propounded by it, or under its direction, and to fine or imprison any witness for his failure or refusal to obey the process served on him by such committee, or to answer any such pertinent questions propounded; provided, that such fine shall not exceed one hundred dollars, nor shall imprisonment extend beyond the date of the adjournment of the legislature then in session; and provided, further, that the testimony given by a witness before such investigating committee shall not be used against him in any criminal action or proceeding, nor shall any criminal action or proceeding be brought against such witness on account of any testimony so given by him, except for perjury committed before such committee."

As authority for his detention this statute is assailed by the relator. He points to Section 15, Article 3 of the Constitution, reading thus:

"Each House may punish, by imprisonment, during its sessions, any person not a member, for disrespectful or disorderly conduct in its presence, or for obstructing any of its proceedings; provided, such imprisonment shall not, at any one time, exceed forty-eight hours."

Twice this provision has been considered by the appellate courts, but in neither case was the imprisonment fixed beyond forty-eight hours.   See Canfield v. Gresham, 82 Texas Reports 10; Ex parte Wolters, 64 Texas Crim. Rep. 239; and Ex parte Gray, 64 Texas Crim. Rep. 342.   In the case before the Supreme Court, the power to punish for contempt under the *constitutional* provision mentioned was affirmed.   The question before the court in the Wolters' and Gray cases, supra, was the validity of a judgment of contempt entered by the House of Representatives for the refusal to answer questions propounded by a committee appointed by that body to make inquiry touching alleged irregularities in an election to determine whether an amendment to the Constitution should be adopted.   The conclusion reached by a majority of the court was against the validity of the judgment.   There was a dissenting opinion and separate opinions by each member of the court.   One member held that the investigation, not covering the subject embraced within the Governor's call of the special session, was, under Sec. 40 Art. 3. of the Constitution, beyond the jurisdiction of the Legislature.   With the merits of the controversy over that subject as reflected in the Wolters and Gray cases,

we have no present concern. It is enough to say that the article of the Constitution which authorizes each House to punish its members, is warrant for an inquiry concerning alleged corrupt practices of such members affecting legislation. See Const., Art. 3, Sec. 11. In the course of the discussion, however, Presiding Judge Davidson used this language touching Art. 3, Sec. 15, supra:

"It may be said that the Legislature would have inherent power to punish for contempt, it might also be said that the Constitution recognizes the fact and empowers that body to protect itself under the circumstances stated in article 3, section 15. That section fixes the limits of jurisdiction, at least it sought so to do by the language employed. To a certain extent, under the terms of section 15, the Legislature may be said to have judicial authority, or rather it may be said it has authority to act in a judicial capacity in ascertaining the facts and assessing the punishment therein prescribed. Whether the power is inherent or not, section 15, article 3, grants authority as well as expressly limits the extent of that authority."

In the case of Ex parte Gray, supra, the majority opinion was written by Judge Harper. If we properly comprehend it, it is to the effect that the refusal of Gray to testify before the committee could not be made a subject of contempt for the reason that such refusal was not *"obstructing the proceedings of the House."* Upon this subject, we copy from the opinion the following:

"The power to punish for contempt being a judicial power, requiring a judicial ascertainment of fact by a tribunal, and the adjudgment of punishment, the legislative department has no inherent power, as it is called, to exercise this judicial power, for this power is conferred upon the judicial department·by this provision of the Constitution, unless in the Constitution is found some provision which expressly permits the legislative department to exercise it. In exercising judicial powers the legislative department must look to the Constitution for permission so to do, and if it is not found therein, it is prohibited from exercising that power, for in that instrument it is declared that 'no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein permitted.'

"So we must look alone to section 15 of article 3, to judge if permission is given the legislative department of the government to exercise this judicial power in cases of this character. That this permission is given the legislative department under this section of article 3 of the Constitution, during its sessions, to punish as for contempt for disrespectful or disorderly conduct in its presence, or for obstructing its proceedings, is plain, and the only question to be determined is, what is meant by the words 'obstructing its proceedings?' as used in our Constitution."

The conclusion reached was that the offensive conduct in question

was not "obstructing the proceedings." Judge Prendergast, the dissenting member of the court, was of the opinion that the term "proceedings of the House" incorporated in the Constitution did embrace the inquiry which the committee before whom Gray and Wolters appeared, was conducting, This conflict of judgment as to the interpretation of the language "obstructing the proceedings of the House" is not important in the instant case. That the present inquiry does relate to the "proceedings of the House" within the provisions of the Constitution seems obvious. The power of the Legislature or of either House to appoint a committee and delegate to it the power to make any proper investigation with reference to a charge that in their official conduct its members were corrupt is beyond question. Notwithstanding the contrariety of views of the members of the court concerning some phases of the Wolters and Gray cases, they were unanimous in their opinions that the Legislature's power to punish for contempt comes from an express provision of the Constitution. This is true although the statute here relied on (Art. 5517) was passed five years antecedent to the date of the Wolters and Gray decisions. What inherent power with reference to contempt the Legislature would have had if the Constitution had been silent upon the subject is beside the question for the reason that in exercising the judicial attribute of punishment for contempt, our Legislature looks to the power granted in Art. 3 of Sec. 15 of the Constitution. The fact referred to by respondent that in statutes creating administrative bodies with judicial power or courts, the power of the Legislature to authorize punishment for contempt does not imply that it may by statute extend its own power or that of its members beyond the limits of the clause of the Constitution which confers and defines the power.

"It is a general rule that when a constitution confers a power, or enjoins a duty, it also confers by implication any incidental power necessary for the exercise of the one or the performance of the other."

"The general rule stated above is modified by another—that where the means for the exercise of a granted power are also given, no other or different means or powers can be implied, either on account of convenience or of being more effectual. And where the manner of exercising a given power is prescribed, the method thus designated is exclusive." (Amer. & Eng. Ency. of Law, 2nd Ed., Vol. 6, p. 928.)

The same rule has been affirmed by text-writers and applied by judges on many occasions. See Cooley's Const. Limitations, 4th Ed., pages 78 and 94; Cyc. of Law & Proc., Vol. 8, p. 742; Cooley's Const. Limitations, 7th Ed., pages 191 and 246; Holley v. State, 14 Texas Crim. App. 517; Parks v. West, 102 Texas Reports 11; Morris v. Powel, 125 Ind., 281; Page v. Allen, 98 Amer. Dec., 272. Many other cases might also be cited. In the Wolters and Gray cases the

94 T. C.—22

statutes mentioned was ignored and it was held that the clause of the Constitution quoted was the authority for punishment by the Legislature for contempt. The *constitutional* provision confers upon *each House the power to punish for contempt*. The *statute* upon which the present judgment rests *confers* upon a *committee* this power. This, it is claimed by the relator, offends against the general principle concerning the delegation of power. To the committee authorized by Article 5517 of the Revised Statutes is delegated the power to determine the propriety and pertinency of the questions propounded and to determine that the refusal to answer them is unauthorized and wilful and to fix the punishment. The statute makes no restriction as to the number of members of any particular committee. It may be composed of a large or small number of members of the House and Senate, and have the power to enter a judgment of contempt conferred by statute upon the House or upon the Senate as the case may be. Touching the validity of the statute, the decisions of other states are not adequate as a guide, in that they deal with different facts and are under constitutions variant from ours. In so far as they do furnish precedents, generally speaking, they declare that where a committee of investigation finds a witness unwilling to testify, the question of conviction and punishment should be referred to the body appointing the committee. This apparently is the procedure contemplated by Art. 3, Sec. 15 of the Constitution and is the procedure followed by the House in the proceedings against Wolters and Gray. The exercise of the judicial power involved in a judgment for contempt is permitted by the Constitution by either branch of the body, but when this power is conferred upon an individual or collection of the members of the House, or either or both of them, the right to exercise the power delegated *to the whole of the body* is conferred by that body upon *a few* and *that few are within the terms of the inhibition contained in Sec. 1, of Art. 2, of the Constitution, which forbids the exercise of judicial power of a member or members of the Legislature*. The power granted it by the Constitution is not so restrictive of the right of the Legislature to punish for contempt as to thwart it in the conduct of its proper proceedings. The term "obstructing is proceedings" contained in the Constitution is deemed broad enough to embrace not only the things that were done in the presence of the Legislature but those done in disobedience of a committee which impeded or obstructed the proper discharge of the functions of the committee. The statute (Art. 5517) having given relator against self-incrimination, immunity, each branch of the Legislature had the power to punish him for contempt in refusing to be sworn and answers proper questions. The right to punish him, however, would be limited by the Constitution in the extent and in the manner of its exercise and could not be exerted by a committee.

Because the judgment assesses a punishment greater than that

named in the Constitution, and because the judgment of contempt was rendered by the members of a committee and not by the House or Senate, in which bodies the power to punish is vested, the judgment of the District Court should be reversed and the relator discharged, and it is so ordered.

*Relator discharged.*

May 7, 1923.

LATTIMORE, Judge, (concurring).— The exigencies of the situation confronting us in this case; the brief time remaining of the Special Session of the Legislature whose action is in question; the imperative need for a decision of the case before adjournment of that body, if they be benefited or guided by our conclusions, have caused us to review, possibly without that mature deliberation which ought to be exercised the various authorities cited by both sides in this controversy as well as many others which have been examined in an effort to solve the questions. All the authorities pertinent are from other states than ours.

The law under which the Committee was acting, which adjudged this appellant in contempt and committed him to jail for twenty days, was passed in 1907, and apparently this is the first time that any effort has been made to use the power and authority there attempted to be conferred upon a legislative committee. In Ex parte Wolters, 64 Texas Crim. Rep. 238, and Ex parte Gray, 64 Texas Crim. Rep. 311, the question was not in any sense whether a committee of the Legislature had power to imprison Wolters and Gray for contempt but was whether the Legislature itself at a Special Session could so act. We have no doubt of the power of the Legislature at a Special Session to do this, but will not discuss the question because not necessary in view of our disposition of the matter. We merely observe that the Legislature has just as much power to expel members for wrongful acts and conduct at a Special Session as it would at a Regular Session, and that being true it would have the same power to investigate those things pertaining to such conduct.

In our review of the authorities of other states and of the Federal courts we are confronted with the immediate difficulty that the facts in each case differ and the constitutions of the several states in many instances differ. The only cases that have been cited here at all similar on the facts are different in the constitutions of the states in which they were disposed of. These cases will probably be reviewed by my brother Hawkins. In our investigation of the authorities we have had constantly in mind the desire to uphold Article 5517, Complete Laws of Texas 1920, under which the Committee were acting at the time of this commitment for contempt. We have been unable to bring ourselves to believe that we can consistently uphold it. The

Committee of the Legislature that adjudged Youngblood in contempt was beyond doubt a collection of persons of the Legislative Department of our government. Article 2 of our Constitution contains but one section, which is as folows:

"Departments of Government to be kept distinct,—The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

The Constitution of this State is the highest authority known to us in matters outside the domain of Federal jurisdiction; that article of the Constitution just quoted containing this statement "and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted," and it being unquestioned that the Committee was such collection of persons of the Legislative Department, there would seem to remain only the questions as to whether they were attempting to exercise power properly attached to the Judicial Department of the government, and if so,— whether there is that anywhere else in the Constitution which "expressly permits" such exercise of power. The annotations to the case of Farnham v. Colman, 117 American State Reports, 944, presents one of the most extended discussions of the question of contempt punishable by various courts and other bodies, to which we have had access. We quote from said annotation:

"The power to punish for contempt is undoubtedly a judicial power, and therefore, statutes undertaking to vest it in tribunals which are not judicial, must be unconstitutional: Whitcomb's Case, 120 Mass. 118, 21 Am. Rep. 502; Haughey v. Ryan, 182 Mo. 349, 81 S. W. 435."

We know of no authority anywhere holding that the power to punish for contempt is not the exercise of a judicial function.

Turning to the other question, we have searched through the Constitution in vain for anything that "expressly permits" a Committee of the Legislature, or any collection of persons belonging to the Legislature Department, to imprison for contempt. The only reference to the question of contempt as relates to the Legislature in any way is that contained in Sec. 15, Article 3 of the Constitution, which in terms "expressly permits" each house of the Legislature to imprison for contempt for not exceeding forty-eight hours at any one time. In our opinion under our Constitution, while the Legislature may function through a committee and because of the refusal of any person to answer proper inquiries before the committee, the matter

may be reported to the house appointing the committee for its action, and said house of the Legislature may by appropriate proceedings adjudge such person in contempt, and he be thereafter imprisoned for the time specified by the Constitution for such contempt, the Committee itself has no such power because of the forbiddance of the Constitution. We may further observe that in our opinion the power of the Legislature, while in terms limited to imprisonment for forty-eight hours "at any one time," may be exercised time after time for each fresh refusal and each new contempt until it obtains the desired information. We do not think one may only be punished for his contempt of the law-making power of this State in the refusal to recognize its authority to obtain from him information to aid it in its work of representing the people in making laws or maintaining the integrity of the legislative body by the single punishment of forty-eight hours confinement in some jail, if the need continues on the part of the Legislature for such information and the contemptuous witness further refuses after such punishment to divulge what he may know. The interests of the entire State can not be thwarted by the refusal of a witness to divulge knowledge.

Being of opinion that Article 5517, supra, in so far as it attempts to confer power on a committee of the Legislature to punish for contempt, is not only without sanction of the Constitution but is directly contrary to the expressed declaration of that instrument, we must hold said law unconstitutional and reverse this case, and direct a discharge of the appellant.

May 7, 1923.

HAWKINS, Judge, (concurring).—It is expedient to write in some detail upon the construction of Article 5517, R. S., which undertakes to confer upon legislative committees in existence at the time of the passage of the law, or upon those thereafter created, the power to punish for contempt. The opinions of our own court in Ex parte Wolters, 64 Texas Crim. Rep., 238, and Ex parte Gray, 64 Texas Crim. Rep., 311, while with reference to a proceeding for contempt incident to inquiries by a committee appointed by the house of representatives do not aid except in so far as they express the views of the court upon certain provisions of our Constitution.

Article 5517 was in force at the time the investigation in the Wolters and Gray matter was had, but the committee did not assume to act under its authority and itself adjudge the parties guilty of contempt, but made report to the house of representatives which then acted under the right expressly recognized in Section 15, Article 3 of the Constitution, that "Each house may punish by imprisonment, during its sessions, any person not a member, for disrespectful or disorderly conduct in its presence, or for obstructing any of its proceedings; provided, such imprisonment shall not at any time exceed forty-eight hours."

The decisions of those cases turned upon entirely different points than the one now before us, as is pointed out by Presiding Judge Morrow. We are referred by respondent to only two cases holding that a legislative committee may itself punish for contempt. One is Ex parte Parker, 74 S. C., 466, 7 Am. & Eng. Ann. Cases, 874 the other Sullivan v. Hill, 73 W. Va., 49, 79 S. E., 670. In the Parker case the opinion rather assumes that the legislature had the right to delegate this power to the committee and does not discuss the question at length. The opinion concludes with this statement:

"The conclusions reached as to the power of legislative committees are sustained by the following authorities: Anderson v. Dunn, 6 Wheat (U. S.) 204; In re Chapman, 166 U. S. 611, 17 U. S. Sup. Ct. Rep., 677; Burnham v. Morrissey, 14 Gray (Mass.) 226, 74 Am. Dec. 676; People v. Keeler, 99 N. Y. 463, 2 N. E. Rep. 615; People v. Sharp, 107 N. Y., 427, 14 N. E. Rep., 319, 1 Am. St. Rep., 851; Matter of Gunn, 50 Kan. 155, 32 Pac. Rep., 470, 948, 19 L. R. A., 519."

If the cases above enumerated were intended to present authority sustaining the right of the legislature to delegate power to a committee to punish for contempt they do not sustain the proposition. In Anderson v. Dunn the House of Representatives of the United States Congress had appointed a committee to make certain investigations; this committee reported back to the House which acted directly in holding the witness in contempt, not of the committee, but of the House of Representatives, and the warrant of committment under the resolution was signed by Henry Clay who was then speaker of the House of Representatives. In Chapman's case he refused to answer questions propounded by a committee appointed by the United States House of Representatives. The committee did not assume the right to punish him for contempt for such refusal, but he was prosecuted for a misdemeanor in the Federal Court under an Act of Congress making such refusal a violation of law, and this Act of Congress was attacked as being unconstitutional. The question of the right of the committee to punish for contempt was not discussed, and did not arise in that case. In Burnham v. Morrissey, Burnham refused to answer questions propounded by the House of Representatives of the State of Massachusetts. The committee reported the refusal to the House and the House of Representatives adjudged him guilty of contempt, not the committee. In People v. Keeler, Keeler refused to answer questions propounded by a committee appointed by the Senate of the State of New York. The committee reported to the Senate and that body brought the witness before them and adjudged him guilty of contempt. The other two case of People v. Sharp (supra) and Gunn (supra) neither support the proposition that a committee appointed by the legislature may itself hold a witness in contempt of such committee. The case of Sullivan v. Hill, (supra) recognizes

that In re Davis, 68 Kan. 368, 49 Pac. 160, is not in consonance with
the holding of the West Virginia Court and cites People v. Learned,
5 Hun (N. Y.) 626, and Ex parte Parker (supra) as supporting the
holding in Sullivan v. Hill.  We have already shown that the author-
ities cited in the Parker case do not support the proposition that a
legislative committee may punish for contempt; neither do we under-
stand the opinion in People v. Learned (supra) to support such hold-
ing.  Learned's case turned upon another point.  By an Act of the
Legislature of the State of New York a canal Ingestigating Com-
mission was created, and clothed with authority to summon and ex-
amine witnesses. · This commission was not appointed by the legisla-
ture, and so far as the record show it did not consist of members of
that body; they were appointed by the Governor of the State.  The
question was the right of the Legislature of the State of New York
to clothe the commission so appointed with quasi judicial power to
punish recalcitrant witnesses for contempt.  This power might be
conceded in the legislature and still would not solve the question con-
fronting us.

In the case now being considered the legislature has appointed its
own members on the committee and undertaken to clothe that com-
mittee with larger judicial power than the constitution (Art. 3, Sec.
15) conferred upon the legislature itself.  We quote from Cooley on
Constitutional Limitations, 6th Edition, page 161:

"Each house must also be allowed to proceed in its own way in
the collection of such information as may seem important to a proper
discharge of its functions, and whenever it is deemed desirable that
witnesses should be examined, the power and authority to do so is
very properly referred to a committee, *with any such powers short of
final legislative or judicial action as may seem necessary or expedient
in the particular case.* \* \* \*  A refusal to appear or to testify before
such committee, or to produce books or papers, would be a *contempt of
the house; but the committee cannot punish for contempts; it can only
report the conduct of the offending party to the house for its action.*"

In re Davis, 58 Kan. 368, in which the right of the legislative com-
mittee to punish for contempt is denied we find the following language:

"That legislative bodies have the power to enforce obedience to
their rules of order and to compel witnesses to give testimony upon
matter calling for legislative action, though sometimes questioned, is
well established, and should be regarded as the settled law.  Story
on the Constitution, vol. 1. Sec. 846, et seq; Cooley's Constitutional
Limitations, (6th Ed), 158, et seq.; Anderson v. Dunn, 6 Wheat,
204; In re Flavey, 7 Wis. 630; Ex parte McCarthy, 29 Cal. 395;
Cushing's Law and Practice of Legislative Assemblies (9th Ed.)
Sec. 655; In re Gunn, 50 Kan. 155.  The power to punish as for a
contempt resides in the houses separately; and, while a refusal to
testify before a committee duly appointed is a contempt of the house

appointing such committee, and may be by it punished as such, the committee has no implied power to punish, and can only report the conduct of the offending party to the house for its action. Cooley on Constitutional Limitations, 161. The power to punish as for a contempt is not expressly given to the houses of the Legislature by the Constitution, but is taken by implication because necessary to the independence and integrity of these bodies. The limits of the power so implied are not clearly marked.''

The language in the opinion necessarily refers to the Constitution of Kansas as not expressly giving to the legislature the right to punish for contempt, and therefore the court bases its opinion upon the inherent right in the legislature to protect itself and enforce its legislature functions. The absence from the constitution of that state of any express authority to punish for contempt caused the court further to say ''The limits of the power so implied are not clearly marked.'' The constitution of our own state does not leave the leigslature in such a position. It has spoken clearly in Article 3, Sec. 15, and upon the powers therein recognized the Constitution places limitations and they are clearly marked. While the opinions in the Wolters and Gray cases (supra) use some expressions with which we are not in accord, as pointed out in the opinion of Presiding Judge Morrow, yet all of those opinions, as we understand them, recognize that the Article and Section of the Constitution just referred to places limitations upon judicial functions to be exercised by each branch of the legislature in matters relating to contempt. This is further emphasized by Article 2 of our Constitution dividing the powers of government into legislative, judicial and executive, and in adding the very significant words:

''and no person or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.''

We have therefore not been able to bring ourselves in accord with the proposition of respondent that the Legislature can delegate to a committee of its own members the right to exercise the limited judicial authority granted by the Constitution to the Legislature itself. There is no express grant in the constitution permitting this to be done. We have been unable to reach the conclusion that the legislature would have any right to delegate the limited judicial authority expressly conferred upon it by the Constitution.

The judgment holding relator must be reversed, and he ordered discharged.