**BEXAR COUNTY HOSPITAL DISTRICT, Appellant,**

v.

**Jack B. CROSBY et al., Appellees.**

**No. 13385.**

Court of Civil Appeals of Texas. San Antonio.

Dec. 31, 1958.

Rehearing Denied Feb. 4, 1959.

J. Bruce Aycock, Harvey L. Hardy, San Antonio, for appellant.

Carlos C. Cadena, City Atty., Charles L. Smith, Asst. City Atty., Hubert W. Green, Dist. Atty., L. J. Gittinger, John G. Murray, Asst. Dist. Attys., San Antonio, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted by Bexar County Hospital District, a municipal corporation, created under the provisions of Sec. 4 of Art. IX of the Texas Constitution, Vernon's Ann.St., against Jack B. Crosby in his official capacity as County Auditor of Bexar County, and also against Bexar County and the City of San Antonio, seeking a Declaratory Judgment construing the provisions of Sec. 4 of Art. IX of the Texas Constitution and Art. 4494n, Vernon's Ann.Civ.Stats., the enabling act thereunder, for the purpose of determining the custody and control of certain hospital

bond interest and sinking funds and also the proceeds derived from certain delinquent taxes. The case was submitted on an agreed statement of facts and conclusions of law, and resulted in a declaratory judgment to the effect that Sec. 13, paragraph 2, of Article 4494n, Vernon's Ann. Civ.Stats., is unconstitutional, and that the Hospital District is not entitled to the proceeds from delinquent taxes levied by the County and City for hospital purposes prior to the creation of the hospital district, and further that it is not entitled to the hospital bond interest and sinking funds held by the County and City, respectively. The Hospital District has prosecuted this appeal.

■ The second paragraph of Sec. 13, Art. 4494n, V.A.C.S., which the trial court held to be unconstitutional, reads as follows:

"That portion of delinquent taxes owed cities and counties on levies for present city and county hospital systems under Acts 48th Legislature, 1943, Chapter 383, page 691, shall continue to be paid to the Hospital District by the city and county as collected, and applied by the Hospital District to the purposes for which such taxes originally were levied."

If the court was correct in holding that this paragraph of the Statute is unconstitutional, then the judgment insofar as it affects delinquent taxes should be upheld. In approaching this question it is well to keep in mind that the old hospital system under which the City-County Hospitals were operated was not a municipal corporation. It was not a legal entity and had no power to levy taxes; it was simply a joint agency through which the City and County operated their hospitals for the needy. The Hospital District is a legal entity created under the provisions of Sec. 4 of Art. IX, Texas Constitution, with power to levy and collect taxes up to 75¢ on the $100 valuation of all taxable property within the District, which is co-extensive with Bexar County.

Article 9, § 4, of the Constitution, under the provisions of which the Hospital District was created by a vote of the property tax-paying voters of Bexar County, reads as follows:

"§ 4. County-wide hospital districts

"Sec. 4. The legislature may by law authorize the creation of county-wide Hospital Districts in counties having a population in excess of 190,000 and in Galveston County, with power to issue bonds for the purchase, acquisition, construction, maintenance and operation of any county owned hospital, or where the hospital system is jointly operated by a county and city within the county, and to provide for the transfer to the county-wide Hospital District of the title to any land, buildings or equipment, jointly or separately owned, and for the assumption by the district of any outstanding bonded indebtedness theretofore issued by any county or city for the establishment of hospitals or hospital facilities; to levy a tax not to exceed seventy-five ($.75) cents on the One Hundred ($100.00) Dollars valuation of all taxable property within such district, provided, however, that such district shall be approved at an election held for that purpose, and that only qualified, property taxpaying voters in such county shall vote therein; provided further, that such Hospital District shall assume full responsibility for providing medical and hospital care to needy inhabitants of the county, and thereafter such county and cities therein shall not levy any other tax for hospital purposes; and provided further that should such Hospital District construct, maintain and support a hospital or hospital system, that the same shall never become a charge against the State of Texas, nor shall any direct appropriation ever be made by the Legislature for the construction, maintenance or improvement of the said hospital or hospitals. Should the Leg-

islature enact enabling laws in anticipation of the adoption of this amendment, such Acts shall not be invalid because of their anticipatory character. Added Nov. 2, 1954."

We will here make a rather full statement of the facts. Prior to 1949, the Robert B. Green and Southton Hospitals were operated by Bexar County. In 1949, pursuant to Article 4494i, V.A.C.S., the City and County entered into an agreement for the joint support of said hospitals, and provided that these hospitals would be administratively operated by the San Antonio-Bexar County Hospital Sytem. By this agreement, as finally amended, the City agreed to contribute toward the operation of the Hospital System $110,000 for the period commencing August 1, 1949, and ending December 31, 1949, and thereafter to contribute to the operation of said Hospital System the amount of money raised by a levy by the City of an ad valorem tax of .10 per $100 valuation on the property subject to taxes for such purposes.

This agreement between the City and County remained in effect until about June 28, 1955, when the Hospital System was abolished and the appellant Hospital District created. During the existence of the contract between the City and County for the joint support of the Hospital System, the City not only paid to the Hospital System the amount of money required by the aforementioned agreement with the County, but it also made the following expenditures and contributions in addition thereto for the benefit of the Hospital System:

1. On January 20, 1955, by Ordinance No. 20898, the City Council appropriated and set aside the sum of $704,196 from the General Fund of the City and made this sum available to the exclusive use of the Robert B. Green Hospital, a part of the Hospital System, to be used by said Hospital System to defray its operating expenses, which amount the Hospital System withdrew from the City.

2. During the existence of the Hospital System the City paid for the gas and electrical services to the facilities of the Hospital System. The total amount paid for these services by the City was $44,089.02.

3. The City's financial set-up is one where it borrows money to use during the current fiscal year and repays the lender with taxes collected the following tax year, and during the time the Hospital System was in existence the City borrowed money each year to help finance the Hospital System, and in so doing had to make interest payments to the lender on the amount borrowed. The interest payments on the money borrowed to help support the Hospital System totaled $13,909.02.

Under the ten cent tax levied by the City pursuant to its contract with the County, the City collected and paid to the Hospital System a total of $2,716,084.40. If all the taxes were collected pursuant to this ten cent tax levy and if there were no delinquent taxes outstanding, a total of approximately $2,982,912.98 would have been collected by the City and transferred to the Hospital System. In fact a total of $3,478,278.44 (not including the cost of assessing and collecting the taxes), was either paid to or used for the benefit of the Hospital System by the City, which amount is far in excess of the amount the City contracted to give to said Hospital System.

In May, 1953, the Legislature passed Article 4494n, V.A.C.S. hereinafter referred to as "the Anticipatory Act", which was to become effective upon the adoption of the proposed constitutional amendment to be submitted to the voters at the general election in November, 1954. This enactment was to be the enabling act of Article 9, Section 4, when adopted, and provided for the transfer to the newly created Hospital Districts of "title to land, buildings, and equipment."

In November, 1954, Article 9, Section 4, was adopted as an amendment to the Constitution and provided, as did the Antici-

patory Act, for the transfer to the newly created Hospital Districts of "title to land, buildings, and equipment."

In May, 1955, the Anticipatory Act was amended by the Legislature by Acts 1955, 54th Legislature, Chapter 257, S.B. 224, and, in addition to providing for the transfer of "title to land, buildings and equipment" as did the Anticipatory Act and the Constitutional Amendment, the Legislature provided for the transfer of delinquent taxes as collected as above set forth.

On or about June 28, 1955, pursuant to Article 9, Sec. 4 of the Constitution and Article 4494n, V.A.C.S., as amended, the District was duly established by the approval of the majority of the qualified voters, and the Hospital System was abolished.

Upon the establishment of the District, the City, pursuant to Article 9, Sec. 4, of the Constitution, and Article 4494n, V.A.C.S., transferred to the District the lands, buildings, and equipment which included such things as food, drugs, supplies, records, etc. In addition, the unspent portion of the funds set up for the hospital system was transferred to the District.

The City and County, however, refused to transfer the delinquent taxes on levies for the benefit of Hospital System pursuant to Section 13 and claimed this section to be unconstitutional.

Appellant, Hospital District, takes the position that the Legislature has the plenary power to establish hospital districts and to provide for the transfer to the hospital district from the City or County anything it desires without constitutional authority, and, therefore, the fact that Sec. 4 of Art. 9, in providing that the title to "land, buildings or equipment" would be transferred, does not prohibit the transfer of the proceeds from delinquent taxes.

■ The trial court correctly held that the second paragraph of Sec. 13, Art. 4494n, V.A.C.S., was unconstitutional. Under the provisions of §§ 51 and 52 of Art. 3, Texas Constitution, the Legislature was without authority to require the City and County to pay over to the District the proceeds of the delinquent taxes in issue.

Section 51 reads in part as follows: "The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; * * *."

Section 52 provides in part as follows: "The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, * * *."

The Hospital District was created under the provisions of Sec. 4 of Art. 9, of the Texas Constitution and by a vote of the people of Bexar County. The Constitution through the Legislature gave to it the power to levy and collect an ad valorem tax almost equal to that which the County can levy and collect for all county purposes. The Constitution through the Legislature required the Hospital District when created to assume the payment of all outstanding bonded indebtedness theretofore issued for hospital purposes by either the County or the City, and it required the County and City to transfer to the Hospital District the title to any land, buildings or equipment jointly or severally owned by them. The Constitution through the Legislature required the Hospital District to assume full responsibility for providing medical and hospital care to needy inhabitants of the County and relieved the County and City from such duty. However, the Legislature in passing an enabling act to carry into effect the Constitution went further than the Constitution and provided, in the second paragraph of Sec. 13 of Art. 4494n, V.A.C.S., that the City and County should also transfer to the Hospital District all delinquent taxes levied before the

creation of the District but collected thereafter. We must presume that the Legislature well knew that when the new Hospital District was created it would be unlawful for the City or County to transfer to such District any funds or property belonging to either of them in violation of Art. 3, §§ 51 and 52, unless expressly given Constitutional authority to do so, and with this in mind the framers of Sec. 4 of Art. 9 of the Constitution carefully selected the language they used in providing the property which was to be transferred to the new district. They named land, buildings or equipment, jointly or separately owned by the County or City, and stopped there. Cramer v. Sheppard, 140 Tex. 271, 167 S. W.2d 147; Markowsky v. Newman, 134 Tex. 440, 136 S.W.2d 808. In view of the fact that delinquent taxes were not mentioned, we must presume that the framers of Section 4, and the voters who adopted it intended that delinquent taxes should not be transferred. We might speculate as to why they did not include delinquent taxes and never determine the real reason. They may have realized that, as in the case of the City, it had borrowed money from the bank and advanced this money to the hospital system and would need the delinquent taxes to pay off its note at the bank. They may have thought that it would be a great burden, hardship and nuisance to have to keep separate accounts for many years so as to be able to account to the Hospital District for each and every dollar collected on these delinquent taxes through the years to come. They may have thought that an ad valorem tax of 75¢ for $100 valuation would furnish the District all the money it would ever need. However, we are not concerned with why the framers of Sec. 4, Art. 9, did not see fit to include delinquent taxes in the property to be donated by the City and County to the new Hospital District, it is sufficient that they did not. In this instance we feel that the maxim, "Expressio unius est exclusio alterius" should be applied, and the Legislature exceeded its authority and violated the provisions of Secs. 51 and 52 of Art. 3, of the Texas Constitution, when it provided in the second paragraph of Sec. 13, Art. 4494n, V.A.C.S., that it would be the duty of the City and County to transfer to the Hospital District the proceeds collected from the delinquent taxes in question.

A case directly in point is Harris County Flood Control District v. Mann, 135 Tex. 239, 140 S.W.2d 1098, 1104. There the Flood Control District instituted a mandamus proceeding in the Supreme Court to require the Attorney General to approve certain issues of bonds proposed to be issued by the District. In the Legislative Acts creating the District, without any constitutional authority, there were passed two provisions to the effect that should the necessity arise the Commissioners' Court could supplement the State taxes granted. The Court, in holding that these provisions were unconstitutional, said:

"So far as pertinent here, Section 52 of Article III of our State Constitution prohibits the Legislature from authorizing any county to lend its credit, or to grant public money or thing of value, in aid of any corporation whatsoever. We have already held that this District is a governmental agency and a body politic and corporate, separate and independent from Harris County. It follows that, under the plain terms of Section 52 of Article III, supra, no part of the funds of Harris County can be pledged or used to pay the bonds of this District."

It is a well-known principle of law that when one section of the Constitution expresses a general intention to do or not to do a particular thing (Art. 3, §§ 51 and 52), and another section expresses a particular intention incompatible with the general intention, (Art. 9, § 4) that the particular intention is to be considered in the nature of an exception. County of Harris v. Shepperd, Tex., 291 S.W.2d 721; Smith v. Grayson County, 18 Tex.Civ.App. 153, 44 S.W. 921.

Thus, Article 9, § 4, must be considered an exception to Article 3, §§ 51 and 52.

 Constitutional provisions which are not ambiguous and are not open to more than one construction or interpretation, must be given their full effect without regard to the consequences. Cramer v. Sheppard, 140 Tex. 271, 167 S.W.2d 147; Rawlins v. Drake, Tex.Civ.App., 291 S.W.2d 349.

The phrase "title to any land, buildings or equipment" is not ambiguous and means exactly what it says. Therefore, we should not have to go any further in the construction of this amendment, since it is perfectly clear that in November, 1954, when the people of Texas, acting in their sovereign capacity in fixing the fundamental law of the State by Constitutional Amendment (Art. 9, § 4), and deciding that the title to "land, buildings or equipment" should be transferred to the newly created hospital district, and not including any language whatsoever that would include delinquent taxes, they prescribed in definite terms that only land, buildings and equipment would be granted to the District and delinquent taxes would not. Collingsworth County v. Allred, 120 Tex. 473, 40 S.W.2d 13; Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627; Farrar v. Board of Trustees of Employees Retirement System of Texas, 150 Tex. 572, 243 S.W.2d 688; Deason v. Orange County Water Control & Improvement Dist. No. One, 151 Tex. 29, 244 S.W.2d 981; Purcell v. Lindsey, Tex., 314 S.W.2d 283.

Appellant has cited us to decisions of other States where it is held that the Legislature in dealing with public health has broad powers which it would not have in dealing with other matters not involving public health and public welfare, but such States must not have in their constitutions provisions such as Art. III, §§ 51 and 52 of our Constitution.

The Legislature in enacting the second paragraph of Sec. 13 of Art. 4494n, requiring the County and City to transfer to the Hospital District funds derived from the collection of taxes levied for the purpose of supporting and carrying on the old Hospital System without any constitutional authority, did so in violation of Sections 51 and 52 of Art. III of our State Constitution, and the trial court properly held such paragraph void and unconstitutional.

 This brings us to a consideration of the question of sinking funds and interest derived therefrom. Neither the Constitutional provisions of Sec. 4 of Art. 9, nor the enabling act passed by the Legislature requires the City and County to transfer to the Hospital District sinking funds on hand, which they had placed in such sinking funds for the purpose of retiring bonds they had theretofore issued for the purpose of building hospitals and purchasing hospital equipment. These funds are trust funds and the beneficial owners thereof are the owners and holders of the bonds. City of Austin v. Cahill, Tex.Civ.App., 88 S.W. 536; Rittenoure v. City of Edinburg, 5 Cir., 159 F.2d 989, 993. The unpaid portions of these bonds have now been assumed by the Hospital District, but this is no reason why these funds should be turned over to the District. The fact that the payment of the bonds has been assumed by the District, as between appellant and appellees, makes appellant primarily liable and appellees secondarily liable, but as between the appellees and the bondholders appellees are still primarily liable. 6 Tex.Jur. 608, § 6, and § 109, pp. 729–730.

There can be no question but that the bondholders can require the appellees to apply these trust funds to the payment of the bonds held by them, but this furnishes no reason why the appellees should abandon their trust and turn these trust funds over to a newly created Hospital District. Neither the Constitution nor the statutes require or permit them to do so. Appellees undertook to have the bond owners made parties to this suit so that this mat-

ter might be disposed of with all interested parties present, but this was denied. If the appellees should pay these trust funds over to the new district without the consent of the bondholders, they would not thereby discharge their duties to the bondholders or trustee of these funds.

If the framers of this Constitutional Amendment had intended that appellees should turn over to the Hospital District these trust funds, it would have been very easy for them to have so provided. The fact that they did not leads us to believe that they did not so intend.

The above holdings render appellant's other points immaterial.

The judgment is affirmed.

BARROW, Justice (dissenting).

I do not concur with the majority opinion insofar as it holds that Bexar County and the City of San Antonio are not required to pay over to the Bexar County Hospital District the sinking funds now on hand, which were levied and collected by the County and City to pay interest on and pay off and discharge the bonds which have been assumed by the Bexar County Hospital District. Nor do I concur in the holding that the County and City are not required to pay to the Hospital District all delinquent taxes levied by the County and City, as such interest and sinking fund, prior to the assumption of such bonds but collected and to be collected since such assumption.

The Constitutional Amendment authorizing the creation of the Bexar County Hospital District, adopted at the 1954 General Election (Art. IX, § 4) insofar as is pertinent to this suit, reads as follows:

"Sec. 4. The Legislature may by law authorize the creation of county-wide Hospital Districts in counties having a population in excess of 190,000 and in Galveston County, * * * where the hospital system is jointly operated by a county and city within the county, * * * to provide for the transfer to the county-wide Hospital District of the title to any land, buildings or equipment, jointly or separately owned, and for the assumption by the district of any outstanding bonded indebtedness. theretofore issued by any county or city for the establishment of hospitals or hospital facilities; to levy a tax not to exceed seventy-five ($.75) cents on the One Hundred ($100.00) Dollars valuation of all taxable property within such district, provided, however, that such district shall be approved at an election held for that purpose, and that only qualified, property taxpaying voters in such county shall vote therein; provided further, that such Hospital District shall assume full responsibility for providing medical and hospital care to needy inhabitants of the county, and thereafter such county and cities therein shall not levy any other tax for hospital purposes; * *. Should the Legislature enact enabling laws in anticipation of the adoption of this amendment, such Acts shall not be invalid because of their anticipatory character."

The Legislature, pursuant to the authority granted by the Constitution, enacted the law governing the creation, maintenance and operation of the District and setting forth the rights and duties and responsibilities of the District, the county and the city with respect thereto, being Article 4494n, Vernon's Ann.Civ. Stats.

Section 2 of the Act provides for the levy and collection of the tax mentioned and also provides for the collection of fees for the Assessor and Collector of Taxes, and then provides: "The residue of tax collections, after deduction of discounts and fees for assessing and collecting, *shall be deposited in the district depository;*

and such funds shall be withdrawn only as provided herein." Emphasis added.

Section 4 of the Act provides for the assumption of all legal obligations theretofore contracted by the City and County for the building and support and maintenance of such hospital facilities, including the payment of all bonds issued by either of them for such purposes, and provides for the full and complete release of the City and County from all liability for the payment of such obligations, including the duty to provide interest and sinking funds for the payment of such bonds.

The statute also provides for the appointment of a Board of Hospital Managers, and provides that the management of the physical and financial affairs of the district shall vest in such Board.

It is stipulated by the parties that Bexar County Hospital District has assumed all bonded indebtedness called for by Article 9, § 4, of the State Constitution and Article 4494n Vernon's Ann.Civ.Stats., as amended, and that the Commissioners' Court of Bexar County, on behalf of the Hospital District, has levied an ad valorem tax each year since the creation of the District to retire said bonds. That beginning October 1, 1955, and each year thereafter, the Tax-Assessor-Collector of Bexar County has collected the taxes due said District and has transmitted same to the District. That the Hospital District has been paying to the City and County the amounts of money necessary to meet current installments on the hospital bonds, and they, in turn, have been forwarding such amounts to the paying agent of the bondholders, and that delinquent taxes on levies made by the City and County for hospital bond interest and sinking funds, as collected, have been deposited, by both City and County, in the respective hospital interest and sinking funds since establishment of the Hospital District.

It was further stipulated that the County had on hand at the time of trial, the sum of $123,546.37 for the interest and sinking fund for retirement of the Hospital bonded indebtedness, and that it had been the practice of the County to place such funds on "time deposit" with the County Depository and transfer the interest earned thereon to the General Fund of the County. The City had in the City Depository, as interest and sinking funds for the payment of its Hospital bonded indebtedness, the sum of $2,003.72 as of July 31, 1957. That the City also has such funds on "time deposit" but has placed the interest thus earned back in said fund.

It is argued by the appellees that because neither this amendment nor the statute passed thereunder expressly directs that the County and City shall turn these interest and sinking funds over to the Hospital District, they may keep such funds, although they may not be used for any other purpose. Here we have a situation where the payment of these bonds, principal and interest, is made the obligation of the Hospital District. The County and City are relieved of the duty to pay them or to levy any taxes for that purpose, and at the same time they retain the funds which under the law cannot be used for any other purpose. The majority opinion does not even make any requirement that these funds shall ever be applied to the payment of these bonds.

Appellees further contend that inasmuch as the constitutional amendment provides that they shall transfer to the Hospital District the title to any land, buildings and equipment, jointly and separately owned, and did not expressly provide that they should transfer the interest and sinking funds, that the doctrine "Expressio unius est exclusio alterius" applies, and excludes the transfer of the interest and sinking funds levied, assessed and collected for the payment of the Hospital bonds. This would, indeed, be a strict construction.

As said by the Supreme Court in Collingsworth County v. Allred, 120 Tex. 473, 40 S.W.2d 13, 15:

"It is true in construing Constitutions that resort may be had to the well-recognized rule of construction contained in the maxim 'expressio unius est exclusio alterius.' * * * But such rule of construction will not be given effect where the facts and circumstances surrounding the adoption of the amendment demonstrate that the people in adopting the same intended a different meaning to be given to their action. Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S.W. 553."

The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the. framers and the people who adopted it. Collingsworth County v. Allred, supra; Aransas County v. Coleman-Fulton Pasture Co., supra.

Another well settled rule is that when a constitution confers a power, or enjoins a duty, it also confers, by implication, any incidental power necessary for the exercise of one or the performance of the other. Imperial Irr. Co. v. Jayne, 104 Tex. 395, 138 S.W. 575; Griner v. Thomas, 101 Tex. 36, 104 S.W. 1058; Ex parte Youngblood v. State, 94 Tex.Cr.R. 330, 251 S.W. 509; Stites v. Sutton County, Tex.Civ.App., 272 S.W. 506.

Here we have a proposition that has been voted upon, once by all the qualified voters of Bexar County and again by the qualified taxpaying voters of such County, under which the Hospital District has been created and has assumed the payment of all County and City bonded indebtedness incurred for hospital purposes and is made fully responsible for the payment thereof. The County and City are completely relieved of any duty to pay such bonds or to levy any tax for such purpose. Here we also have a statute enacted by authority of the constitutional amendment, spelling out in detail the method for the levy, assessment and collection of taxes to pay such bonds, and expressly providing that the proceeds, less assessing and collecting fees, "shall be deposited in the district depository," and controlling the method of withdrawal thereof.

It is obvious that the framers of the amendment and the voters who adopted the same intended that the Hospital District should have custody, control and disposition of the interest and sinking funds involved in this case, as well as that portion of any delinquent taxes which have been levied and assessed for the purpose of payment of such bonds during the years prior to the creation of the district but collected or to be collected thereafter. It is equally obvious that the Hospital District having assumed such bonded indebtedness, it was not intended that it should be deprived of the means of carrying out such obligation.

I would reverse the judgment of the trial insofar as it affects the interest and sinking funds now held by either the County of Bexar or the City of San Antonio and render judgment that appellant, Bexar County Hospital District, recover judgment against the appellees, Bexar County, Texas, and City of San Antonio, for the possession, title and control of the sinking funds now held by each of them for the payment of hospital bonds, which bonded indebtedness has been assumed by appellant, Bexar County Hospital District, and further, that appellees, Bexar County and City of San Antonio, and each of them be ordered to pay over to appellant, Bexar County Hospital District, all that portion of the delinquent taxes which were levied and assessed for the purpose of paying interest and creating a sinking fund to pay off the bonds assumed by the Hospital District, as and when such delinquent taxes are collected.

I respectfully dissent.