## JOHN MESSENGER V. THE STATE.

### No. 4529. Decided June 13. 1917.

**1.—Adultery—Information—Complaint—Practice in County Court.**

Where, upon trial of adultery, the county attorney only read to the jury the complaint and thereupon called to the witness stand his first witness and propounded the question whether or not he had ever seen defendant and the alleged adulteress together, to which defendant objected for the reason that the information had not been read to the jury, which objection was overruled. Held, reversible error. Prendergast, Judge, dissenting.

**2.—Same—Information—Complaint.**

While the complaint is the basis of the information, the prosecution can not be had without the information and its being read to the jury, and where only the complaint is read, a timely objection to the evidence should have been sustained, and the county attorney permitted to read the information and a plea of not guilty entered, and where this was not done, the judgment must be reversed and the cause remanded. Following Essary v. State, 53 Texas Crim. Rep., 596, and other cases. Prendergast, Judge, dissenting.

**3.—Same—Impeaching Own Witness.**

Where, upon trial of adultery, the State put the alleged adulteress on the witness stand, and asked her whether or not she had sexual intercourse with the defendant, which she answered in the negative, the county attorney should not have been permitted to introduce in evidence the written statement of the witness that she had such sexual intercourse, either for purposes of impeachment or any other purpose. Prendergast, Judge, dissenting.                    *(*

**4.—Same—Immunity—Accomplice.**

The alleged adulteress is an accomplice of the defendant who was tried for adultery, and unless the promise of immunity by State's counsel was sanctioned by the court, she could not be compelled to testify, and even then such promise would be worthless unless the accomplice testified to the truth; besides, the State was bound by the answer of the witness, and could not claim surprise. Prendergast, Judge, dissenting.

**5.—Same—Impeaching Testimony—Charge of Court.**

Where, upon trial of adultery, certain impeaching testimony against the adulteress was illegally admitted in evidence, the court should have at least limited the same to the purposes of impeachment; besides, she could not corroborate her own testimony. Prendergast, Judge, dissenting.

Appeal from the County Court of Lampasas. Tried below before the Hon. J. Tom Higgins.

Appeal from a conviction of adultery; penalty, a fine of three hundred dollars.

The opinion states the case.

*T. S. Alexander* and *Roy L. Walker,* for appellant.—On question that

defendant must be tried on information: Pate v. State, 17 S. W. Rep., 461; Sponberg v. State, 60 Texas Crim. Rep., 168, 131 S. W. Rep., 541; Garza v. State, 11 Texas Crim. App., 410; Wilkins v. State, 15 id., 420; Zinn v. State, 68 Texas Crim. Rep., 149, 151 S. W. Rep., 825; Compton v State, 71 Texas Crim. Rep., 7, 158 S. W. Rep., 515; Ethridge v. State, 76 Texas Crim. Rep., 41, 172 S. W. Rep., 786.

On question of impeacning State's witness: Hoy v. State, 45 S. W. Rep., 916; Garcia v. State, 74 S. W. Rep., 916; Brown v. State, 67 Texas Crim. Rep., 543, 150 S. W. Rep., 436.

On question of limiting testimony: Winfrey v. State, 41 Texas Crim. Rep., 538; Benjamin v. State, 57 Texas Crim. Rep., 291, 122 S. W. Rep., 542.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of adultery, his punishment being assessed at a fine of $300.

This is a case of circumstantial evidence. Appellant was charged with having had habitual carnal intercourse with Ada Goodman, the said Ada Goodman being a married woman, without living together. Bill of exceptions No. 1 shows that after the jury had been empaneled the county attorney read to the jury the complaint and called Standridge to testify, and after being questioned as to his name and residence, and if he knew appellant, he was asked the question whether or not he had ever seen defendant and Ada Goodman together. Appellant objected to the testimony of this witness for the reason the information had not been read to the jury, and the reading of the complaint to the jury not being in accord with the statute. This was all overruled and the witness testified. This is generally stated here because this matter runs throughout the case. The judge states that the State offered to read the information and the defense objected, whereupon the court ordered the trial to proceed without reading the information. The reason given by the judge in his qualification is a strong reason why his ruling was error. When the defense objected he was entitled to have that objection sustained, and the county attorney required to read the information. Appellant was only called upon to plead to the information, not a complaint. The complaint is the basis of the information, but the prosecution can not be had without the information and its being read to the jury. It is to this that the accused is required to plead. Appellant's objection was well taken to the evidence, and the court should have sustained it and permitted the county attorney to then read the information and a plea should then have been entered, and the case then tried. See art. 717, C. C. P. Among the late and one of the best considered cases among the decisions of Texas is Essary v State, 53 Texas Crim. Rep., 596, written by Judge Ramsey when he was a member of this court. He reviews the authorities and the whole matter. Appellant's objection either should have been sustained

or the county attorney required to read the information, and then try the case.

Another bill recites that the county attorney asked the witness Ada Goodman if she and defendant had not had intercourse in Lampasas County on numerous occasions. She replied in the negative; thereupon the county attorney asked her if she had not stated to the justice of the peace and county attorney that she had had carnal intercourse in Lampasas County on numerous occasions and if she did not sign a written statement to that effect, the county attorney reading from a purported statement made by said witness. To all this appellant objected for divers reasons. The county attorney stated it was offered for the purpose of impeachment, which statement was then read. To all this exception was reserved. The court signs this with the statement that the State through its attorney had promised the witness Ada Goodman immunity from prosecution for her part in the adultery charge, provided she would testify to this matter "as per her knowledge of all the matter," and when she was placed on the stand by the State she denied the whole of her former statement, and the county attorney pleaded surprise and offered the statement for the purpose of impeachment of Ada Goodman, and the court admitted the testimony or former declaration on that point. It will be noticed that the promise of immunity, as stated by the judge, and this is the only place where it occurs so far as this record is concerned, was made on the condition that the accomplice would testify to this matter as it was within her knowledge. She was an accomplice, and a promise of immunity by State's counsel in order to be binding would have to be sanctioned by the court. There is nothing in the record and nothing in the bill of exceptions to show that the court agreed to any dismissal of the prosecution against her unless it be the mere fact that he required her to testify upon the statement of the county attorney that he had promised the witness immunity on the stated conditions. This promise, as stated, was not an exemption from prosecution if the county attorney and the court are correct. Immunity from punishment or from prosecution under such circumstances is not binding and amounts to nothing unless the immuned accomplice testifies to the truth. This has been settled by an unbroken line of decisions in Texas. She was an accomplice, and if the State's contention is right she was guilty, and she had made a statement to that effect, and the State expected to prove those facts. There was no immunity; there was no dismissal of the prosecution, and so far as the record is concerned this prosecution was held over her without dismissal so that she might testify against defendant to incriminating facts. She has not been rendered by the very statement of the county judge immuned from punishment if she did not tell the truth, even had the county judge sanctioned the immunity promise. This matter has been the subject of a great deal of discussion in the decisions as to when the State may impeach its own witness under the theory that the State has been surprised and

injured. This qualification of the judge does not show that the woman agreed to turn State's evidence. The county attorney proposed immunity if she would testify to the matter as she understood it, otherwise than by an indirect conclusion suggested by the fact the State swore her as a witness, there is nothing to indicate that she ever agreed to such thing, and when placed upon the stand she emphatically denied the whole matter. She was an accomplice and could not be forced to testify, and could not be used against her consent. See 51 Texas Crim. Rep., 643. The rule also is in matters directly upon this question that declarations of a codefendant can not be used against the other codefendant. Quinn v. State, 51 Texas Crim. Rep., 155. While for the State a codefendant may be a competent witness, yet the State is bound by such circumstances as each case may develop. The witness may testify freely for the State if he or she so desires, and may thus turn State's evidence with or without any contract, but where the party turns State's evidence on a contract that contract must be sufficient to be binding in the courts. It is not thought necessary to cite authorities on that proposition. Had she testified as the State anticipated, she would have been an accomplice, and the trade was made with her upon the theory that she was an accomplice, otherwise the promise of immunity would have been worthless. From any view we think this impeachment was not admissible. She had testified to no fact against the State except she declined to state that appellant was guilty of having carnal intercourse with her; in fact, she stated he had not had. This was not injurious to the State. She had not testified to anything against the State. She had just refused or failed to make out a case for the State. Had she testified to some material fact against the State that would be damaging to its case, we would have had a different proposition, but she had not testified anything against the State in stating that she had not had intercourse with appellant. The State was trying to make out a case through her testimony, but she declined to assist the State. It was just a failure on her part or a refusal to assist the State in proving the guilt on the part of the defendant. We are of opinion this testimony was not admissible from any viewpoint.

The signed statement of Ada Goodman was offered in evidence and admitted over appellant's objection. It is unnecessary to discuss that because it is a part of the same proposition. The State should not have been permitted under the circumstances to put the witness on the stand, and failing to prove a fact, then impeach her by proving that she had made statements otherwise that would implicate or incriminate the defendant. The court did not charge with reference to the use of the impeaching testimony or that the woman was an accomplice and could not corroborate herself. Certainly she could not be corroborated by such character of impeachment. She was made not only an unworthy witness by impeachment, but this emphasized the fact that her testimony was used to get before the jury evidence she refused to give and fully denied.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE (dissenting).—This case should be affirmed; not reversed. The record distinctly and positively shows that the case was called for trial on March 1, 1917; that the State was represented by the county attorney and the defendant in person and by an attorney, and that both parties announced ready for trial and the defendant in open court entered his plea of "not guilty." A jury trial was had and he was found guilty. , This is nowhere disputed in the record.

One bill shows that after the jury had been empaneled, the county attorney read the complaint and introduced the witness Standridge, and that after he had been questioned as to his name and residence and asked if he knew appellant, he was then asked, "whether or not he had ever seen the defendant and Ada Goodman together." Whereupon, the defendant objected to said testimony or any testimony by said witness for the reason that the information had not been read in compliance with the statute. The court in qualifying the bill states: "It was offered by State to read information and defense objected, whereupon court ordered trial to proceed without reading of information," and the trial did then proceed.

This, under the express decision of this court in Barbee v. State, 32 Texas Crim. Rep., 171, in an opinion by Judge Davidson, was a waiver of the reading of the information. In the Barbee case, which was a felony, the indictment through inadvertence had not been read and this was not discovered until after all of the evidence had been introduced. Thereupon Barbee objected to the district attorney then reading the indictment. The district attorney also offered to reintroduce the evidence, to which defendant objected upon the ground that it had already been placed before the court and jury. The court, through Judge Davidson, held: "The court held this to be a waiver of the reintroduction of the testimony, and sustained the objection. We are of opinion the ruling was correct. . . . Under the circumstances, its reintroduction would have been more of a formality than otherwise, and was, we think, waived by defendant. . . . While, under the terms of the Code of Criminal Procedure, article 660, it is mandatory that the indictment be read to the jury before .the evidence is offered, and while it may be true the conviction would be illegal should this not be done, it would nevertheless be proper, upon discovery of this omission, to read such indictment to the jury, and reintroduce the testimony; and it is an equally correct proposition, that the accused could waive both the reading of the indictment and the reintroduction of the evidence. We are of opinion that the ruling of the court in the matter complained of was not erroneous"; and the judgment in that case was affirmed.

The case of Essary v. State, 53 Texas Crim. Rep., 596, cited as sustaining the majority opinion in this case, does not do so, and is wholly inapplicable to the question. The syllabus on the point in that case clearly expresses what was decided therein. It is: "Where upon trial for murder it appeared that all the testimony of the State was offered before the indictment was read, or before any plea on the part of the defendant had been entered, and there was no offer made by the State to reintroduce the testimony, the same was reversible error under article 697, Code Criminal Procedure." In that case the Barbee case, above referred to, is expressly cited, quoted from and approved. Besides the bill in no way discloses what testimony, if any, the State's witness Standridge gave, hence in no event did that bill present any error.

The other point decided by the majority opinion is in direct conflict with the statute and all the decisions thereunder. The bill on this point shows that the woman had made a written statement before the officers wherein she expressly swore that appellant had had sexual intercourse with her repeatedly, frequently and many times. The State relied upon her as its witness and introduced her as such with the idea that she would testify as she had already sworn. But instead of doing so she testified to the reverse, that appellant had never had sexual intercourse with her at any time. A statement is made in the opinion herein to the effect that this testimony by her "was not injurious to the State." A strange statement. I do not know how anything could have been more injurious to the State. She had stated before to the officers in a sworn statement that he had had intercourse with her as stated above, and now when the State relied upon her and introduced her to prove the same thing by her she positively swore he had never had intercourse with her at any time. The statute expressly states (art. 815, C. C. P.): "The rule that a party, introducing a witness, shall not attack his testimony is so far modified as that any party, when facts stated by the witness are injurious to his cause, may attack his testimony in other manner, except by proving the bad character of the witness." It had always heretofore been held in compliance with the statute that when either party in reliance upon what a witness said he would swear introduces such witness and he swears the reverse of it that whichever side introduced him can impeach him by showing that he before made a reverse statement, and that by showing surprise, which was done in this case, can impeach the witness by showing the previous statement. For a collation of some of the authorities see the note under said article in 2 Vernon's Criminal Statutes, p. 763.

The immunity of the witness has no application in this case. She did not fail to testify but she did testify and testified the reverse of what she had previously sworn and stated to the officers she would swear.

The evidence is amply sufficient to sustain the conviction and the judgment should have been affirmed and not reversed. I dissent.