LOUIS FERRANTELLO V. STATE.

No. 25,818. October 8, 1952.
Rehearing Denied February 18, 1953.
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) April 22, 1953.

472

*Polk Shelton, Looney, Clark & Moorhead, C. J. Meyers,* by *Everett L. Looney* and *R. Dean Moorhead,* Austin, for appellant.

*Price Daniel,* Atty. Gen. of Texas, Les C. Proctor, Jr., County Atty., Travis County, *W. Hugh Lyerly,* Asst. Atty. Gen. of

Texas, and *George W. Blackburn,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is a violation of Article 5429a, Vernon's Ann. Civil Statutes; the punishment, twelve months' confinement in jail and a fine of $1,000.

The appellant was subpoenaed to appear before the Crime Investigating Committee of the House of Representatives, 52nd Legislature of the State of Texas, on June 2, 1951. He did appear and, prior to being sworn, tendered the committee an affidavit setting forth the fact that he was then under indictment in the district court at Dallas for the offense of operating a gambling house and the further fact that he had not been granted immunity by the district judge of said court.

After being sworn, the appellant was asked several questions, among them being, "Are you in the book-making business?" and "Do you know anybody else in the book-making business?" These and other questions, the appellant refused to answer on the grounds that his answers might incriminate him.

It is for this failure to reply that appellant was indicted by the grand jury of Travis County.

We shall attempt to discuss the points raised by appellant's able counsel. His first attack upon the statute is grounded upon the contention that the caption thereof did not apprise the members of the legislature and the public of the fact that the body of the Act, and particularly Section 3 thereof, granted immunity from prosecution "for any transaction, matter or thing concerning which he truthfully testified". The caption contains this phrase, "providing for privilege of witnesses". Section 3 reads as follows:

"No witness is privileged to refuse to testify to any fact, or to produce any paper, respecting which he shall be examined by either House of the Legislature, or by any committee of either House, upon the ground that his testimony to such fact or his production of such paper may tend to disgrace him or otherwise render him infamous. Any person called upon to testify or to give testimony or to produce papers upon any matter under inquiry before either House or in the Committee of either House of the Legislature or Joint Committe of both Houses,

who refuses to testify, give testimony or produce papers upon any matter under inquiry upon the ground that his testimony or the production of papers would incriminate him, or tend to incriminate him, shall nevertheless be required to testify and to produce papers, but when so required, over his objections for the reasons above set forth, such person shall not be subject to indictment or prosecution for any transactions, matter or thing concerning which he truthfully testified or produces evidence, documentary or otherwise."

We must test the sufficiency of the caption in the light of Section 35, Article III, of our State Constitution, which reads, in part, as follows:

"No bill * * * shall contain more than one subject, *which shall be expressed in its title.*"

The reason underlying this constitutional requirement is that fraud and deception in the enactment of legislation is made less likely if the caption, which is often the only part of the bill read by busy members of the legislature, fully apprises the members of the contents of the bill itself.

There is no dearth of authority on this question, and we have reviewed them with the above reason in mind. It is elementary to observe that the caption need not be as complete as the bill itself.

Members of the legislature need not be lawyers, and it is a matter of common knowledge that many are not. What, then, does the word "privilege" mean to the average man who possesses the qualifications of a legislator? Webster defines it to mean: *a grant of a special right or immunity.*

It must be borne in mind that we are not here construing a word of art which the legislature has seen fit to employ in a statute but are, rather, testing whether the members of the legislature, as a matter of fact, had notice from the caption that the body of the bill itself provided that if one were called as a witness before either house or a committee thereof, he should not have the privilege of refusing to testify but, in lieu thereof, should be granted statutory immunity.

A great many authorities and texts have been cited by both parties, in which equally as many general expressions may be found. To discuss them would but lengthen this opinion.

We find against appellant's contention number one.

Appellant's second contention that the Act is unconstitutional is based on the fact that the Constitution of Texas (Section 15 of Article III) provides:

"Each House may punish, by imprisonment, during its sessions, any person not a member, for disrespectful or disorderly conduct in its presence, or for obstructing any of its proceedings; provided such imprisonment shall not, at any one time, exceed forty-eight hours."

while Section 2 of Article 5429a provides for the maximum penalty assessed in this case.

Great reliance is had upon Ex parte Youngblood, 94 Tex. Cr. R. 330, 251 S. W. 509, wherein we held that the legislature was powerless to raise the maximum punishment set forth in the Constitution of Texas.

The fundamental distinction between the Youngblood case and the case at bar lies in the identity of the tribunal assessing the punishment. In the Youngblood case, the legislature sought to impose the punishment, while in the case at bar the court set the punishment upon a verdict of the jury following a trial for the substantive offense of refusing to answer questions propounded by a legislative committee.

"The power of the Legislature of this state to make a given act penal is not limited to the permission of the Constitution and exists in all cases except where specifically forbidden by the terms of that instrument." Reeves v. State, 227 S. W. 668.

We hold it to be within the power of the legislature to enact a law creating the substantive offense involved in this prosecution and placing the jurisdiction for its enforcement in a proper judicial tribunal. It follows that the court, rather than the legislature, assesses the punishment, and Section 15 of Article III of the Texas Constitution has no application.

Appellant's third contention is that he would not have gained immunity from the prosecution pending against him in Dallas if he had answered the questions propounded to him, because the act in question is unconstitutional as an invasion of the functions of the judicial branch of the government. That is, he contends that, once the district court at Dallas acquired

jurisdiction over the appellant, any effort on the part of the legislature to grant him immunity would be futile, because it would constitute a violation of the division of the powers of government set forth in Section 1 of Article II of our Texas Constitution. Stated in another way, appellant contends that such would be an encroachment upon the jurisdiction of the court to try the case pending on its docket.

Appellant's reasoning appeals to the natural desires of a judge to guard the prerogatives of his branch of the government, but we can assert no greater power than the Texas Constitution grants us. The right of a district court to grant immunity is statutory and not constitutional.

Secion 3 of Article 5429a does not affect the constitutional jurisdiction of the district court but would have given to appellant, had he truthfully answered the Committee's questions and incriminated himself in connection with the pending case, a defense which he might have interposed upon the trial of such case.

In Ex parte Miers, 124 Tex. Cr. R. 592, 64 S. W. (2d) 778, we said, "If restricted to the granting of immunity before conviction, the statute is not obnoxious to the Constitution, there being no infringement of the pardoning power."

To our minds, the fact that a court has acquired jurisdiction by virtue of pendency of an indictment therein does not alter the general rule or in anywise limit the power of the legislature to make provision for immunity of the one charged.

It is wise for the courts to remember, when passing upon any question concerning the power of the legislature, that they might, to cite a fanciful illustration, meet tomorrow and abolish the offense of murder and that such act would be constitutional. The question before the courts is the power of the legislature and not the wisdom of its acts.

Appellant's fourth contention is that the evidence is insufficient to support the conviction in that the state failed to prove that the committee was in session and that a quorum was present at the time the appellant was questioned.

The witness Meredith testified that the House Crime Investigating Committee had a hearing in the Texas Court of Crimi-

nal Appeals courtroom on June 2, 1951, and that the appellant, in answer to a subpoena, appeared before that committee.

This disposes of appellant's contention that there was no proof that the committee was in session.

Appellant's second contention that there was no proof that a quorum of the committee was actually in attendance at the moment the questions were propounded to him and he refused to answer presents a more difficult problem.

The Supreme Court of the United States, in Christoffel v. U. S., 338 U. S. 84, 93 L. Ed. 1826, reversed a conviction of perjury where the question of a presence of a quorum of the Committee at the time the false testimony was alleged to have been given was raised for the first time on the trial.

No question was raised in the trial of this case as to the presence of a quorum of the committee. Appellant seeks to raise this question for the first time on appeal, contending that the proof is insufficient in that the state did not prove that, at the time he was questioned, a quorum was present.

The Christoffel case was based, in part, upon an act of Congress providing that no measure or recommendation shall be reported from a committee unless a majority of the committee was actually present. We are aware of no comparable Texas statute.

Be that as it may, our holding herein, in line, we think, with the holding of the Supreme Court of the United States in U. S. v. Bryan, 339 U. S. 323, 94 L. Ed. 884, is that one subpoenaed to appear before a committee of the legislature must raise the question of the presence of a quorum when he appears before said committee; and, failing to do so, this court will consider that a showing that the committee was in session constituted prima facie proof that a quorum of the committee was present.

Appellant's fifth contention is that the evidence is insufficient because the state failed to prove that the committee "required" appellant to answer the questions after he had asserted his privilege. The following quotation from the statement of facts, we think, answers this contention:

"Q. Do you know anyone, Mr. Ferrantello, who is in the bookmaking business in the state of Texas? A. I refuse to answer

that, sir, on the grounds that it might incriminate me.

"Q. The Committee is going to insist that you answer that question. A. I refuse.

"Q. The Committee directs you to answer as to whether or not you do know anyone in the state of Texas who is in the book-making business. A. I refuse to answer that, sir."

Appellant's sixth contention is that the evidence is insufficient because the state failed to prove that the questions propounded by Mr. Meredith were authorized by the committee. The proof shows that the committee was in session, that Mr. Meredith was its chairman, and that Mr. Meredith questioned the witness. We hardly think it necessary for each member of the committee to dictate into the record his assent to the procedure employed.

Appellant's seventh and eighth contentions are that the indictment is insufficient to charge the offense for which he was convicted. That is, he says, and we agree, that Article 5429a creates two separate offenses:

1. The willfully making default by failing in any way to respond to the summons, and

2. The refusal to produce documents or answer questions after having responded to the summons.

In the light of this, he contends that the indictment, which reads, in part, as follows, "did then and there wilfully make default by refusing to answer questions" is duplicitous and insufficient.

We must determine the sense in which the phrase "make default" is used in the indictment.

If it be given the meaning of failure to appear before the committee in compliance with the summons, then appellant's contention must be sustained and the indictment must fall. If, on the other hand, it is used as a generic term describing the manner in which the appellant committed the offense here charged; i.e., the refusal to answer questions, then it may be given the ordinary interpretation in common usage; i.e., the failure to perform a legal duty, which we feel was obviously the intent of the pleader. Given such interpretation, the indictment would read "did then and there willfully fail to perform a legal duty by refusing to answer questions". And, reading thusly, the indictment is not subject to appellant's complaint.

In Bell v. State, 142 Tex. Cr. R. 390, 154 S. W. (2d) 650, and Spencer v. State, 142 Tex. Cr. R. 450, 154 S. W. (2d) 846, we had an occasion to consider informations in which a term was used which, if given its technical meaning as defined by the statute, would have rendered one clause of the information repugnant to another. There, we held the term to have been used in its generic sense and, thus, gave it the meaning intended by the pleader.

There, as in the case at bar, there was no doubt in our minds that the charge clearly apprised the defendant at the bar of the accusation against him. Article 405, C. C. P.

Appellant's ninth contention is that the evidence is insufficient to warrant the jury's finding that the refusal to answer the questions was willful.

Appellant concedes that an allegation that the refusal to answer was willfully done is not necessary to charge the offense but asserts that, since the indictment did so allege, then the same must be proven.

Whether an act is done willfully is not ordinarily the subject of direct proof, but it is a state of mind of the accused which the jury may find from the evidence as a whole. We conclude from the record before us that it was here authorized to find that the refusal was willful.

There is nothing in the record given under oath that establishes appellant's claim made in this court that he refused to answer the questions propounded to him upon advice of counsel. We cannot consider a side bar remark of counsel as evidence. We do not, therefore, consider that the question is before us.

Appellant's tenth contention is that the evidence is insufficient because the state failed to prove that the questions propounded to him were pertinent to the inquiry then being conducted by the committee.

The resolution creating the Crime Investigating Committee, introduced in evidence in the case at bar, recited that the same came into being "for the purpose of conducting a sweeping investigation of the reports of organized criminal activities in the State of Texas, and the enforcement of the criminal laws of this State by local officials."

The witness Meredith testified that the purpose of the hearing held on June 2, 1951, was "for the purpose of obtaining testimony on the bookmaking business or racket in Texas."

We think the questions, "Are you in the book-making business?" and "Do you know anybody else in the book-making business?" were pertinent to the inquiry.

Appellant's eleventh contention is that the evidence is insufficient because the offense charged is the refusal to answer questions, while the proof shows the refusal, *while under oath*, to answer questions.

The record shows that the appellant was subpoenaed to appear before the committee, that he did appear, that he was sworn, and that "the great bulk of the questions" propounded to him were not answered. At the time each question was asked, the witness replied that he refused to answer on the grounds that to do so might incriminate him.

At no juncture of the proceedings did the appellant offer to answer any of the questions propounded if he might be permitted to do so without being sworn. We feel that such a question should have been presented to the trial court in order to be properly raised in this court. We find ourselves in accord with the Circuit Court of Appeals in U. S. v. Josephson, 165 Fed. (2d) 82, cited by appellant, when it said: "Consequently this so-called issue of fact is illusory at best and we need not decide whether a refusal to be sworn would alone have violated the statute."

Finding no reversible error, the judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

WOODLEY, Judge.

Appellant argues that Sec. 3 of Art. 5429a V.A.C.S. does two things: (a) it deprives a witness of his privilege against self-incrimination, and (b) it affords him an immunity from prosecution. Upon this theory he contends that the caption "providing for privilege of witness" is insufficient to give notice of both purposes, regardless of whether the word "privilege" be given a technical or non-technical meaning. He argues that if such caption be notice that the witness is granted immunity,

then there is no notice that his privilege against self-incrimination is taken away.

The witness was possessed of his right against self-incrimination under the constitution. This right could not be taken from him by statutory enactment other than by substituting therefor absolute immunity.

Sec. 3 of the act in question provides for immunity to the witness who is required to answer questions which would tend to incriminate him.

Immunity thus arises out of and supplants the constitutional privilege of the witness not to speak about an offense by removing his guilt as to the offense of which he is required to speak.

Under the reasoning in our original opinion we think that the caption is sufficient to give notice of this provision for immunity in lieu of his constitutional right or privilege.

The legislature being without power to deprive the witness of his constitutional privilege against self-incrimination without providing immunity in its stead, we cannot agree that Sec. 3 of the act should be construed as doing two separate things. The first would be ineffectual without the other.

Further, the statute gives immunity to the witness when he answers questions as required by the legislature or the committee, and it has been said that under such circumstances he could not then be giving evidence against himself and the constitutional provision as to self-incrimination would have no application. Ex parte Muncy, 72 Tex. Cr. R. 541, 163 S. W. 29; Ex parte Copeland, 91 Tex. Cr. R. 549, 240 S.W. 314; Griffin v. State, 43 Tex. Cr. R. 428, 66 S.W. 782.

It is next contended that the indictment having alleged that the many questions propounded to appellant were pertinent to the inquiry, it was incumbent upon the state to prove that each and all of the questions were pertinent.

We do not construe the indictment as containing a single allegation as to pertinency of the questions collectively, but rather as alleging that each of the questions was pertinent. Therefore, proof of refusal to answer any of the questions which

were pertinent would suffice, and it is immaterial that one or more of the questions may not have been pertinent.

We were in error in referring to the testimony regarding advice of counsel as a "side-bar remark". A re-examination of the record discloses that Mr. Meredith testified that appellant's counsel advised him not to answer practically every question asked.

Authorities cited by appellant appear to hold that an accused may show justification, when willfulness is an element of a crime, by proving that he honestly and in good faith sought advice of a lawyer as to what he might lawfully do, and fully and honestly laid all of the facts before his counsel, and in good faith followed such advice, relying upon it and believing it to be correct, only intending that his acts shall be lawful. He cites United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223; Williamson v. United States, 207 U.S. 425, 28 S.Ct. 163; Townsend v. United States, 95 F. 2d 352.

If because of the allegation that the refusal was willful these authorities are applicable, nevertheless here, as in Townsend v. United States, supra, there is nothing in the record to indicate that appellant honestly and in good faith sought advice of counsel as to what he might lawfully do; that he submitted to his attorney the true facts as required by the rule stated, or that he acted honestly upon counsel's advice, believing it to be correct and intending only to act lawfully in refusing to testify.

The following rule is announced in Sinclair v. United States, 279 U.S. 263, 73 L. Ed. 692:

"The gist of the offense is refusal to answer pertinent questions. No moral turpitude is involved. Intentional violation is sufficient to constitute guilt. There was no misapprehension as to what was called for. The refusal to answer was deliberate. The facts sought were pertinent as a matter of law, and Sec. 102 made it appellant's duty to answer. He was bound rightly to construe the statute. His mistaken view of the law is no defense."

Appellant next contends that the immunity granted by Sec. 3 of Art. 5429a V.A.C.S. is conditional and therefore insufficient to supplant his privilege against self-incrimination because it requires that he testify "truthfully."

Reliance is had upon the authorities holding that a statutory enactment must afford absolute immunity against future prosecution for the offense to which the question relates, or the witness cannot be compelled to testify.

This court has recognized this rule announced by the Supreme Court in Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. See Ex parte Muncy, 72 Tex. Cr. R. 541, 163 S.W. 29, supra.

We do not understand that the use of the word "truthfully" results in a conditional immunity. The law requires the answers of the witness under oath to be truthful, and the statutes assume that the answer giving immunity will be truthful.

In Douglas v. State, 99 Tex. Cr. R. 413, 269 S.W. 1041, Judge Morrow in construing Art. 694 P.C., said:

"The wording of the statute makes it plain that it was intended that one accused of violating the laws against the traffic of intoxicating liquors might be called upon to testify to facts, but if he *truthfully* discloses his connection with the offense, he is immune from prosecution . . ."

See also Messenger v. State, 81 Tex. Cr. R. 465, 198 S.W. 330.

We think the fact that a witness gave incriminating answers when required would suffice to establish immunity and the burden would be on the state to show that he did not answer truthfully.

It appears to be well settled that the legislature is vested with authority to enact a statute such as Art. 5429a V.A.C.S., requiring a witness to answer a question which answer, but for the immunity granted the witness by the act, would tend to incriminate him. Brown v. Walker, 161 U.S. 591, Ex parte Muncy, 163 S.W. 29.

Whether the benefit to be derived from a legislative investigation is sufficient to justify the granting of complete immunity from prosecution to a witness who has committed a heinous crime appears to us to be a serious question. Its answer is, however, for the legislature and not the courts.

Appellant's motion for rehearing is overruled.