

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0823-21

---

### THE STATE OF TEXAS

### v.

### SANITHA LASHAY HATTER, Appellee

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

---

### WALKER, J., delivered the opinion for a unanimous Court.

### O P I N I O N

Appellee Sanitha Lashay Hatter was charged with felony assault against a peace officer,[1] and

---

[1] We note that the parties and the court of appeals have labeled Appellee's charged offense as assault of a public servant. *See, e.g.*, *State v. Hatter*, 634 S.W.3d 456, 458 (Tex. App.—Houston [14th Dist.] 2021) ("Appellee . . . was arrested for felony assault of a public servant[.]"). However, the indictment's language alleges that Appellee:

> cause[d] bodily injury to S. Latham, hereinafter called the Complainant, a peace officer, by kicking the complainant with her foot, and at the time of the assault the defendant knew the complainant was a peace officer lawfully discharging an official duty.

This language invokes assault of a peace officer, not assault of a public servant. *Compare* TEX.

two misdemeanor cases of driving while intoxicated (DWI). The felony prosecutor and defense counsel on the assault case reached an agreement in which the felony prosecutor promised to dismiss the assault case in exchange for Appellee's promise to plead guilty to the DWI cases. The felony prosecutor later assured Appellee's counsel that, no matter what happened to the DWI cases, he would dismiss the assault case and not re-file it. The assault case was dismissed, but shortly thereafter the DWI cases were also dismissed instead of Appellee entering guilty pleas. The felony prosecutor re-filed the assault case. Appellee filed a motion for specific performance asking the trial court to order the State to move to dismiss the assault case in accordance to the earlier promise not to re-file. The trial court granted the motion, and the re-filed assault case was dismissed. The court of appeals affirmed, finding that the State and Appellee had entered into an enforceable immunity agreement.

Because the agreement between Appellee and the State was in the nature of a plea bargain agreement—not an immunity agreement—the court of appeals applied an inapplicable test for determining whether the trial court erred in granting the motion for specific performance. We reverse the judgment of the court of appeals, and we remand this matter to the court of appeals to determine whether the trial court's order may be sustained by a theory of law applicable to the case. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) ("If the trial judge's decision is correct on any theory of law applicable to the case . . . it will be sustained.").

**I — Background**

---

PENAL CODE Ann. § 22.01(b-2) ("committed against a person the actor knows is a peace officer or judge while the officer or judge is lawfully discharging an official duty[.]"), *with id.* § 22.01(b)(1) ("committed against . . . a person the actor knows is a public servant while the public servant is lawfully discharging an official duty[.]").

Appellee was charged with misdemeanor DWI as well as felony assault of a peace officer, which occurred as part of the same incident. While those cases were pending, Appellee was arrested and charged with a second misdemeanor DWI. The assault case proceeded separately and was scheduled for trial earlier than the DWI cases. Different prosecutors represented the State on the assault case and the DWI cases, and Appellee had different lawyers for the assault case and the DWI cases.

The felony prosecutor filed a motion to dismiss the assault case. On the motion to dismiss form's section for reasons for dismissal, he marked the box labeled "Other" and provided the explanation "State reserves right to refile." The trial court granted the motion and ordered the case dismissed, but the order did not state whether the dismissal was with or without prejudice. Afterwards, the misdemeanor prosecutor, acting separately from the felony prosecutor, had the DWI cases dismissed.

The felony prosecutor re-filed the assault case, and the grand jury indicted Appellee nearly two months after the original case was dismissed. Appellee responded by filing a "Motion for Specific Performance," a brief in support of this motion, and an "affidavit" from defense counsel.[2] Appellee's motion claimed that the felony prosecutor had made a promise and that they had a "gentleman's agreement" to dismiss the assault case and not re-file it, and Appellee sought enforcement of this promise. Counsel's "affidavit" explained:

> The offer from the State to my client in our felony case was that in exchange for a plea of guilty in her Driving While Intoxicated case(s), her Assault of a Public Servant case would be dismissed. Another attorney represented Ms. Hatter on both of her misdemeanor cases. That attorney did not want to plead Ms. Hatter to her Driving While Intoxicated charges so that she could get a dismissal on her felony

---

[2] The "affidavit" was self-sworn by Appellee's counsel but not notarized.

case. Because Ms. Hatter's felony disposition was contingent on her misdemeanor dispositions and her misdemeanor attorney's unwillingness to negotiate a plea in accordance with that agreement, I felt that Ms. Hatter was being treated unfairly.

I spoke on many occasions to the chief prosecutor on the felony case, Mr. James O'Donnell. Mr. O'Donnell understood the problem and unfairness surrounding the misdemeanor disposition affecting her felony disposition. After speaking to him on many occasions (of which I do not remember the dates), we were able to come to an agreement. Mr. O'Donnell agreed that regardless of the disposition of the misdemeanor Driving While Intoxicated cases, he would dismiss the felony Assault of a Peace Officer. He made multiple promises to me that he would not only dismiss the felony case regardless of the misdemeanor dispositions, but that he would promise to never re-file the felony case. He made this guarantee to me multiple times while in the 230th courtroom at 201 Caroline. This disposition was in the interests of justice since Ms. Hatter was being unfairly treated based on her misdemeanor attorney's failure to cooperate with our plea. Such unfair treatment should not unfairly prejudice and hurt Ms. Hatter, and we agreed that this was ultimately the fairest result. Mr. O'Donnell told me that he would give the reason of "other" on the dismissal and would write "subject to re-file" although he again promised that he would not do so and no one else would do so either.

Mr. O'Donnell dismissed Ms. Hatter's felony charge on January 22, 2020, before the dispositions of the misdemeanor Driving While Intoxicated cases. Those misdemeanor Driving While Intoxicated charges were both dismissed the following month on February 10, 2020, because both of those cases contained faulty blood vials, making the results of the blood tests unreliable and unusable. The misdemeanor prosecutors handling those misdemeanor cases determined that without the results of the blood tests, they could not prove and proceed on either case.

Subsequent to this, the arresting officer in these cases found out that all of the cases against Ms. Hatter were dismissed. She complained to the Harris County District Attorney's Office and Mr. O'Donnell was ordered by a superior at the District Attorney's Office to re-file the felony charge of Assault of a Peace Officer. Mr. O'Donnell told his superiors that he made promises to me to not re-file this case under any circumstance. He was ordered nonetheless to do so.

Mr. O'Donnell called me on the phone to tell me about all of these events and his conversation with his superiors or "higher ups" at the District Attorney's Office. He explained to me that he was ordered to re-file the case and apologized. I knew that this was not Mr. O'Donnell's decision as I believe him to be an honest prosecutor and I have no reason to believe he is anything but truthful and honorable.

The trial court held a hearing on Appellee's motion in June. The felony prosecutor testified that the

assault case was set for trial prior to the disposition of the DWI cases, and he confirmed that the State offered to dismiss the assault case if Appellee pled on the DWI cases. He remembered his discussions with defense counsel regarding the case, that he would not re-file the assault case, and that he would not instruct any of his prosecutors to re-file the case. He could not recall the exact words that were used, but he remembered telling counsel that his intention was to dismiss the case and that it was not his intention to re-file the case. However, he did not recall using the words "gentleman's agreement" or "promise" in his conversations with defense counsel.

The felony prosecutor was under the impression that the DWI cases would be worked out, and he felt it was not appropriate to try the assault case when he had extended the offer to dismiss the assault case if Appellee pled guilty on the DWI cases. He said that at the time the felony charge was dismissed, the prosecutors in the misdemeanor court were still in the process of evaluating their cases against Appellee.

According to the felony prosecutor, it was not his decision to re-file the assault case against Appellee. Instead, that decision was made by his supervisors. He said that the complaining witness in the assault case brought it to the attention of the district attorney's office.

Toward the end of the hearing, the trial court asked the felony prosecutor if the disposition of the assault case would have been different if the DWI cases were dismissed first. The felony prosecutor believed the assault case against Appellee was supported by probable cause and "righteous." However, given the fact that Appellee had been twice arrested and charged with DWI, and her assault charge stemmed from one of those DWI cases, he felt that Appellee would be better served by getting help for alcohol or substance abuse rather than having a felony conviction, and that was his preferred resolution for Appellee's case.

At the conclusion of the hearing, the trial court found counsel's "affidavit" true and correct and the felony prosecutor to be "honorable, forthright, and honest." The trial court, noting some uncertainty on its part as to whether "contract law is something that we hear in here," concluded that "a promise was made to dismiss this case no matter what. A dismissal was filed. A promise was made not to re-file. It was re-filed." The trial court granted the motion for specific performance and declared the case dismissed. On the written order granting the motion for specific performance, the trial court hand wrote: "State is ordered to dismiss."

## II — Opinion by the Court of Appeals

The State appealed the trial court's dismissal, arguing that the trial court was without authority to dismiss the indictment or to order the State to dismiss it.[3] *Hatter*, 634 S.W.3d at 460–61. The court of appeals disagreed, finding that there was an immunity agreement between the State and Appellee that was approved and made enforceable by the trial court's grant of Appellee's motion for specific performance and also the trial court's grant of the State's earlier motion to dismiss. *Id.* at 461–62.

Justice Jewell dissented, arguing that not only was there no immunity agreement, there was no agreement at all. *Id.* at 466–68 (Jewell, J., dissenting). As Justice Jewell saw it, the felony prosecutor's promise to dismiss and not re-file the assault case constituted, at most, a unilateral promise unsupported by mutual consideration and binding only if Appellee relied upon that promise and pled guilty to the DWI cases. *Id.* at 467–68. And, even if there was an immunity agreement between the felony prosecutor and Appellee, the trial court never provided the necessary approval

---

[3] Alongside its appeal, the State filed a petition for writ of mandamus, which the court of appeals dismissed as moot. *Hatter*, 634 S.W.3d at 458. The propriety of that judgment is not before this Court.

that would have made the immunity agreement enforceable. *Id.* at 468–69.

We granted the State's petition for discretionary review, which raised the following ground for review:

> The Fourteenth Court erred by holding that a motion to dismiss that explicitly reserved the State's right to refile was retroactively converted into an "immunity agreement" when the trial court dismissed a subsequent case on grounds of equitable immunity. Nothing in the record shows the trial court ever consented to an immunity agreement.

### III — Immunity Agreements

"'Among the necessary and most important of the powers of the States as well as the Federal Government to assure the effective functioning of government in an ordered society is the broad power to compel residents to testify in court or before grand juries or agencies.'" *Kastigar v. United States*, 406 U.S. 441, 444 (1972) (quoting *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 93–94 (1964) (White, J., concurring)). The power to compel testimony is "firmly established in Anglo-American jurisprudence[,]" and it, along with "the corresponding duty to testify, are recognized in the Sixth Amendment requirements that an accused be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his favor." *Id.* at 443–44.

"But the power to compel testimony is not absolute" and is subject to a number of exemptions, "the most important of which is the Fifth Amendment privilege against compulsory self-incrimination." *Id.* at 444. The Fifth Amendment, applicable to the states via the Fourteenth Amendment,[4] provides in pertinent part that:

> No person . . . shall be compelled in any criminal case to be a witness against himself[.]

---

[4] *Malloy v. Hogan*, 378 U.S. 1, 6 (1964); *Olson v. State*, 484 S.W.2d 756, 762–63 (Tex. Crim. App. 1969) (op. on reh'g).

U.S. CONST. amend. V. This right against self-incrimination protects "the individual not only against being involuntarily called as a witness against himself in a criminal prosecution, but also permit[s] him 'not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *In re Medina*, 475 S.W.3d 291, 299 (Tex. Crim. App. 2015) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).

Immunity statutes and agreements seek to strike a balance between the privilege against self-incrimination and the power to compel. *Zani v. State*, 701 S.W.2d 249, 252 (Tex. Crim. App. 1985); *Kastigar*, 406 U.S. at 446. "The concept of immunity . . . is a practical recognition of the importance of required testimony and the reasonable belief that very often only those implicated in the crime have any useful knowledge of its particulars." *Zani*, 701 S.W.2d at 252; *Kastigar*, 406 U.S. at 446. Like the power to compel, immunity also has "historical roots deep in Anglo-American jurisprudence[.]" *Kastigar*, 406 U.S. at 445–46. Long ago, we explained:

> From the earliest times it has been found necessary, for the detection and punishment of crime, for the State to resort to the criminals themselves for testimony with which to convict their confederates in crime. While such a course offers a premium to treachery, and sometimes permits the more guilty to escape, it tends to prevent and break up combinations by making criminals suspicious of each other, and it leads to the punishment of guilty persons who would otherwise escape.

*Camron v. State*, 22 S.W. 682, 682 (Tex. Crim. App. 1893). "[B]ecause of the difficulty in uncovering criminal activity, [immunity] is a pragmatic and necessary tool in criminal prosecution and prevention." *Zani*, 701 S.W.2d at 253.

Accordingly, the government may compel the witness to testify, but in return for his testimony, the State must offer immunity from prosecution or from any use of that evidence. *See*

*Murphy*, 378 U.S. at 79 (a "witness may not be compelled to give testimony which may be incriminating . . . unless the compelled testimony and its fruits cannot be used in any manner . . . in connection with a criminal prosecution against him."). "Immunity . . . is the coin the government must pay to obtain the waiver of a person's right against self-incrimination and the information that he has about some crime." *Smith v. State*, 70 S.W.3d 848, 861 (Tex. Crim. App. 2002) (Cochran, J., concurring).

While an immunity agreement is between the State and the witness, a grant of immunity from prosecution requires the approval of the trial court. *Graham v. State*, 994 S.W.2d 651, 654 (Tex. Crim. App. 1999). A grant of use immunity, however, does not require court approval. *Id.* at 656.

When trial court approval is required, the trial court's dismissal order approving the immunity agreement need not incorporate the terms of the immunity agreement nor must it state that dismissal was "with prejudice" to be enforceable. *Smith*, 70 S.W.3d at 853. Furthermore, the trial court is not required to become familiar with the terms of the immunity agreement. *Id.* at 855. "Provided the judge approves the dismissal that results from an immunity agreement, and is aware that the dismissal is pursuant to an immunity agreement, the judge does not have to be aware of the specific terms of that immunity agreement for it to be enforceable." *Id.*

### IV — Arguments of the Parties

The State relies on our holding in *Smith* and argues that if a motion to dismiss is pursuant to an immunity agreement, the trial court must be aware that there is an immunity agreement *at the time the trial court grants the motion*. As the State sees it, when the trial court granted the felony prosecutor's motion to dismiss the original assault case, the court was not aware of an immunity agreement. Instead, the trial court became aware of the immunity agreement during the proceedings

on Appellee's motion for specific performance, after it had already granted the motion to dismiss the original assault case several months earlier. The State criticizes the court of appeals's judgment as allowing retroactive trial court approval of an immunity agreement.

In response to the State's argument, Appellee points to other language in *Smith*, specifically, where we reiterated that article 32.02 of the Code of Criminal Procedure's requirement that a prosecutor set out the reasons for dismissal in writing was directory, not mandatory, and a prosecutor's substantial compliance is sufficient. *See Smith*, 70 S.W.3d at 853. As a result, when a trial court grants a dismissal sought by a prosecutor, the trial court need not "know the reasons for dismissal to any particular degree." *Id.* We understand Appellee's position to be that, because a trial court does not need to know the reasons for dismissal to any particular degree, then if a dismissal is pursuant to an immunity agreement, that fact need not be presented to the trial court at the time it approves the dismissal. Appellee argues that the trial court provided the necessary approval of the immunity agreement when it granted the motion for specific performance, and she would have us allow the trial court's retroactive approval of the immunity agreement.

Regarding the existence of the immunity agreement in the first place, Appellee further relies on *Smith* wherein we said that: "A grant of immunity from prosecution is, conceptually, a prosecutorial promise to dismiss a case." *Smith*, 70 S.W.3d at 850–51. Based upon that language, Appellee contends that the court of appeals properly found the felony prosecutor's promise to dismiss the assault case and not re-file it was a grant of immunity.

## V — Analysis

While the State's argument focuses upon whether the trial court provided the necessary approval to make the immunity agreement binding and enforceable, Appellee understandably makes

a preliminary argument in support of the court of appeals's determination that there was an immunity agreement, because there is no occasion to ask whether the trial court approved the immunity agreement if there was no immunity agreement to approve. Despite Appellee's best efforts, we are unable to find an immunity agreement here.

To repeat, the statement in *Smith* Appellee relies on provides: "A grant of immunity from prosecution is, conceptually, a prosecutorial promise to dismiss a case." *Id.* We understand Appellee's argument to be:

- *Smith* says a grant of immunity from prosecution is conceptually a prosecutorial promise to dismiss the case.

- Then, a prosecutor's promise to dismiss the case is conceptually a grant of immunity from prosecution.

- Therefore, an agreement to dismiss a case is an immunity agreement.

Appellee's argument has some basic appeal, but we reject it for three reasons.

First, Appellee takes the statement out of context. The full context of the "conceptually" statement in *Smith* is:

> The authority to grant immunity derives from the authority of a prosecutor to dismiss prosecutions. The authority to dismiss a case is governed by Texas Code of Criminal Procedure article 32.02. **A grant of immunity from prosecution is, conceptually, a prosecutorial promise to dismiss a case.** Article 32.02 directs that a dismissal made by the prosecutor must be approved by the trial court. Therefore, a District Attorney has no authority to grant immunity without court approval, for the approval of the court is "essential" to establish immunity.

*Smith*, 70 S.W.3d at 850–51 (emphasis added, footnotes omitted). Clearly, the "conceptually" statement was made to connect the requirement of trial court approval for dismissals to grants of immunity from prosecution. It was not made to declare that, because grants of immunity from

prosecution are promises to dismiss, promises to dismiss are therefore grants of immunity from prosecution.

Furthermore, the discussion in *Smith* was not woven from whole cloth. We were repeating our opinion in *Graham*, which also included the "conceptually" statement:

> In Texas, the power to grant immunity from prosecution is statutory rather than constitutional. *Ferrantello v. State*, 158 Tex. Crim. 471, 476, 256 S.W.2d 587, 591 (1953). Texas has never had a general statute that specifically regulated the granting of immunity from prosecution. Instead, the authority to grant immunity is derived from the statutes that authorize officers of the Judicial Department to dismiss prosecutions. *See Zani v. State*, 701 S.W.2d 249, 253 (Tex.Cr.App. 1985) (the "rationale for such a grant [of immunity from prosecution] has now been embodied at Art.32.02"). **Conceptually, therefore, a grant of immunity from prosecution should be thought of as "a prosecutorial promise to dismiss the case."** Robert O. Dawson & George E. Dix, *Texas Criminal Procedure* 670 (1984). The county attorney or district attorney, who is an officer of the Judicial Department, has the authority to dismiss a prosecution, but only with the approval of the court. *See* Code of Criminal Procedure article 32.02. Therefore a grant of immunity from prosecution also requires the approval of the court. Dawson & Dix, *supra*.

*Graham*, 994 S.W.2d at 653–54 (emphasis added, footnotes omitted). And there in *Graham*, the purpose of the statement is the same: to connect the requirement of trial court approval for dismissals to grants of immunity from prosecution. Like in *Smith*, the "conceptually" statement from *Graham* was not a holding of the Court that, because grants of immunity from prosecution are promises to dismiss, promises to dismiss are therefore grants of immunity from prosecution.

Plus, *Graham*'s cited source for the idea—that "a grant of immunity from prosecution should be thought of as 'a prosecutorial promise to dismiss the case'"—is the casebook by Professors Dawson and Dix. But they, too, were explaining that trial court approval is required for grants of immunity from prosecution.[5] They certainly were not representing that it was the state of the law that

---

[5] Indeed, the professors' discussion is unsurprisingly similar to the above-quoted passages from *Smith* and *Graham*:

promises to dismiss are grants of immunity from prosecution. Accordingly, Appellee reads the "conceptually" statement beyond its context and beyond what was intended.[6]

The second reason we reject Appellee's argument is that it applies a false equivalency between grants of immunity from prosecution and promises to dismiss a case. While grants of immunity from prosecution are conceptually promises to dismiss a case, that does not necessarily mean that all promises to dismiss a case are grants of immunity from prosecution. There are many reasons why a prosecutor may promise to dismiss a case.[7] For instance, the evidence supporting the

---

> Texas cases have upheld the validity of transactional immunity grants by prosecutors. The authority of the prosecuting attorney to grant immunity has been found in Article 32.02 of the Code of Criminal Procedure, which empowers the prosecutor to dismiss a case at any time with the consent of the trial judge. **A grant of transactional immunity is a prosecutorial promise to dismiss the case against the witness in exchange for the testimony.** Unlike other dismissals under Article 32.02, the courts will compel the prosecutor to perform his promise if the witness testifies truthfully and will prevent such charges from being reinstated once they have been dismissed. See, generally, *Student Note, Texas Immunity Law: A Survey and a Proposal*, 10 Houston L. Rev. 1120 (1973)[.]

ROBERT O. DAWSON & GEORGE E. DIX, TEXAS CRIMINAL PROCEDURE 670 (Matthew Bender & Co., Inc. 1984) (emphasis added).

[6] As for the intention of the "conceptually" statement, dismissal is inherent to every grant of immunity from prosecution. In an appropriate case, the State may agree to offer immunity from prosecution in exchange for the witness's agreement to provide sought-after information or testimony. But an agreement can lead to a contract, and parties to a contract will be held to their agreement. Provided that the immunity agreement is valid and enforceable, if the witness fulfills his part of the bargain, then the State should be required to fulfill its part of the bargain. For the State to meet its contractual obligation—honoring the witness's immunity from prosecution—any currently pending and future cases relating to the compelled testimony must be dismissed.

Hence, "[a] grant of immunity from prosecution is, conceptually, a prosecutorial promise to dismiss a case." *Smith*, 70 S.W.3d at 850–51.

[7] The motion to dismiss the original assault case provided a checklist of possible reasons for dismissal, none of which are explicitly for immunity:

charge may be weak or contradicted, such that the prosecutor may believe the State would lose at trial and a trial would waste resources. That prosecutor could promise to defense counsel that he would file a motion to dismiss. Or the parties may have reached a plea bargain agreement in which the State promises to dismiss the charge in exchange for the defendant's promise to plead guilty to a lesser offense. Just as not all rectangles are squares, not all dismissals are grants of immunity from prosecution.

The final, and most important, reason we reject Appellee's argument is that it stretches what is understood by "immunity agreement" too far. An immunity agreement is more than a prosecutor's promise to dismiss a case. It is more than a prosecutor's promise to never file or re-file the case. An immunity agreement carries a particular meaning for criminal practitioners, and as discussed above that meaning is indelibly intertwined with the Fifth Amendment right against self-incrimination and the Sixth Amendment rights to confront one's accusers and to compulsory process. *See Zani*, 701 S.W.2d at 252; *Kastigar*, 406 U.S. at 446. Appellee's argument for why there was an immunity agreement in the present case—the felony prosecutor's promise to dismiss the assault case and not

---

☐ Case refiled as Cause No.
☐ Defendant was convicted in another case: Cause No.
☐ Missing witness.
☐ Request of complaining witness.
☐ Dispositive motion granted.
☐ Probable cause exists, but case cannot be proven beyond a reasonable doubt at this time.
☐ In custody elsewhere – will not be extradited to Harris County.
☐ Due to passage of time, defendant not likely to be located or, if arrested, successfully prosecuted.
☐ No probable cause exists at this time to believe the defendant committed the offense.
☐ Other (explanation <u>required</u>)

re-file it was a grant of immunity—forgets what immunity agreements are.[8]

Because a prosecutor's promise to dismiss a case and not re-file it, standing alone, is not a grant of immunity, we inevitably conclude that there is no record support for the finding of an immunity agreement in this case. There was no grant of immunity in exchange for Appellee's provision of information or testimony as a witness. *See, e.g.*, *Smith*, 70 S.W.3d at 849–50 (charges dismissed against Smith, who "gave a videotaped statement, submitted to a polygraph examination, and offered testimony against his codefendants.").[9] Instead, the agreement here was reached after Appellee had been charged with an offense, the parties believed the better outcome would be for her to get help for substance abuse instead of convicted of a felony, and they reached an initial agreement

---

[8] Black's Law Dictionary provides the following as the definition of "immunity" in the criminal law context:

> 3. *Criminal law*. Freedom from prosecution granted by the government in exchange for the person's testimony. • By granting immunity, the government can compel testimony — despite the Fifth Amendment right against self-incrimination — because that testimony can no longer incriminate the witness.

*Immunity*, BLACK'S LAW DICTIONARY (11th ed. 2019). *See also* DAWSON & DIX at 670 ("A grant of transactional immunity is a prosecutorial promise to dismiss the case against the *witness in exchange for the testimony*.") (emphasis added).

[9] In *Zani*, the immunity agreement read, in relevant part:

> I do hereby agree as District Attorney for the State of Texas for Atascosa County, Texas, to not seek an indictment and to not prosecute Irma Serrano Reyes de Zani if she did not directly cause the death of Julius Alfred Dess and she does the following:
> 1. Return to Texas.
> 2. Give a complete statement of the events of Julius Alfred Dess's death.
> 3. Cooperate with our investigators and all agencies investigating the death of Julius Alfred Dess.
> 4. Turn over all evidence, pieces of evidence and all information known to her about the death of Julius Alfred Dess.

*Zani*, 701 S.W.2d at 250–51.

where the felony prosecutor promised to dismiss the assault case in exchange for Appellee's promise to plead guilty to the DWI cases. This was plainly not an immunity agreement. This was the beginning of a plea bargain agreement. As we explained in *Thomas v. State*:

> There are two basic types of plea bargains—sentence bargains and charge bargains. Sentence bargaining involves a situation in which a defendant agrees to enter a plea of guilty in exchange for the State's binding or non-binding recommendation to the court regarding punishment. Charge bargaining, in turn, involves questions of whether a defendant "will plead guilty to the offense that has been alleged or to a lesser or related offenses, and of whether the prosecutor will dismiss, or refrain from bringing, other charges."

*Thomas v. State*, 516 S.W.3d 498, 502 (Tex. Crim. App. 2017) (citations omitted) (quoting *Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003)).[10]

We agree with the State that there was no enforceable immunity agreement in this case, but not for the reason the State suggests.[11]

### VI — Conclusion

The agreement between the State and Appellee was in the nature of a plea bargain agreement, and the court of appeals erred by concluding that it was an enforceable immunity agreement instead. We reverse the judgment of the court of appeals.

Because we review decisions of the courts of appeals,[12] because the issue before us today is

---

[10] *See also Plea Bargain*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A negotiated agreement between a prosecutor and a criminal defendant whereby the defendant pleads guilty or no contest to a lesser offense or to one of multiple charges in exchange for some concession by the prosecutor, usu. a more lenient sentence or a dismissal of the other charges.").

[11] As a reminder, the State argues that the immunity agreement here was not enforceable because the trial court was, at the time it granted the motion to dismiss the original assault case, not aware that the dismissal was pursuant to an immunity agreement.

[12] *Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) (quoting *Lee v. State*, 791 S.W.2d 141, 142 (Tex. Crim. App. 1990)); TEX. R. APP. P. 66.1.

specifically whether the court of appeals erred in determining that the immunity agreement was approved and made enforceable by the trial court's grant of Appellee's motion for specific performance, and because the parties' briefing was tailored toward that issue, remand is necessary.

We remand this matter to the court of appeals for that court to determine whether the trial court's decision granting Appellee's motion for specific performance is correct under any other theory of law applicable to the case,[13] including but not limited to whether there was an enforceable plea bargain agreement, and, if so, what were the terms of the agreement, whether either party breached the agreement, and whether Appellee was entitled to specific performance.

Delivered: January 11, 2023
Publish

---

[13] *See Romero*, 800 S.W.2d at 543.